Russell, C. J.
(After stating the foregoing facts.) The defendant filed a motion to dismiss the writ of error, upon the grounds: (1) That no person is named as plaintiff in error, and movant has not by his counsel or himself acknowledged or waived service. (2) (a) He has been handed only one copy of what purports to be a bill of exceptions, without any notice whether he was being served individually, or as coguardian of Mary Dillard Harber Jordan, or coguardian and cotrustee of Henry Harber, and without any effort upon the part of the person delivering him the copy to designate to him in what capacity it was being delivered, (b) The bill of exceptions does not name him as a defendant in error in any of the capacities referred to in sub-paragraph (a). (3) There is no evidence upon the face of the record showing legal service upon Mrs. Marie Gould Mauldin, (a) It does not appear from the bill of exceptions that she *152 was a non-resident of the State of Georgia, (b) The purported certificate of the clerk, “This is to certify that I have this day mailed to Mrs. Marie Gould Mauldin, at 98 West Edgewood Avenue, Phoenix, Arizona, who is a non-resident defendant in error in the case of Mary Dillard Harber Jordan v. W. Y. Harber et al., said case being No. 84332, in Fulton Superior Court, a letter containing a statement of the case, that she is a defendant in error therein, that the bill of exceptions has been filed, that it will be ■forwarded to the Supreme Court and will be heard in that court at the present term thereof,” is not authorized by law or by the provisions of Code section 6161, because it does not appear from the bill of exceptions that Mrs. Marie Gould Mauldin is a nonresident of the State, and the certificate is a conclusion of the clerk as to what he did; whereas in law the clerk is required to certify a copy of the letter addressed to the supposed defendant in error, showing that it did contain a statement of the case, that the defendant in error was in fact a defendant in error in the bill of exceptions, and the contents of the notice so mailed should be certified by the clerk in the form of a certified copy instead of a certificate as to the fact.
While it is good practice to designate by name plaintiffs in error and defendants in error, so as to identify the capacity in which each party appears, this is not indispensable. The allegations in the pleadings may illustrate and identify the position of every párty. Upon review of a bill of exceptions, the Code, § 6176, provides: “When the record shows clearly who were the parties to the litigation in the court below, and the bill of exceptions shows that all who were interested in sustaining the judgment of the court below have been served, the writ of error shall not be dismissed because the bill of exceptions sets forth the parties differently from the record, or discloses that some party not interested in sustaining the judgment of the court below has not been served. No party shall be considered as interested in the litigation in' the Supreme Court who will not be affected by the judgment to bo .rendered in that particular case, such as sheriffs upon a money rule when the contest is between various claimants of the fund and not between the sheriff and any one of them, or a receiver occupying a similar relation, or a complainant in a bill of interpleader, and other parties occupying similar positions. This recital of instances *153 shall not be construed to exclude eases coining under the intention of this section but not mentioned therein.” In order words,.all the necessary parties must be brought before the court, but a defendant in the lower court who does not wish' to go any further is not a necessary party.
When the movant was handed one copy of the bill of exceptions, this was notice to him and service of him in each and all of the capacities in which he was named. We know of no rule of law which requires that the same individual who appears in different capacities, which are fully set forth in the proceeding, must be served with more than one copy. Four copies would not give the movant any information he could not receive from the one copy, and it was not necessary for the person delivering him the copy to designate to him in what capacity it was being delivered.
The certificate of the clerk, which we have quoted, complies with every requirement of the Code, § 6161. It is true, where service of a non-resident is made by publication, that the clerk is required to send a letter as prescribed in section 5557; but section 6161 was designed to be used under conditions different from those provided for the service of a non-resident by publication. It contemplates a case in which the plaintiff in error names as a party defendant one whom the plaintiff in error believes to be a resident of this State at the time the bill of exceptions is presented to the trial judge, but later, after the judge has certified the bill of exceptions, discovers that this party is no longer domiciled in Georgia but has become a non-resident, and has moved to an address where he may be found and served by mail. Section 6161 provides: <eWhenever a bill of exceptions is sued out in the trial court, and is certified and filed in said court, and it appears that a defendant in error is a non-resident of this State, and is not represented by counsel so that he ma}’- be served with a copy of said bill of exceptions, the clerk, upon the request of the counsel suing out said bill of exceptions, shall give notice to the non-resident defendant by mailing a letter addressed to him at his post-office; the notice to contain a statement of the case, that he is a defendant in error therein, that the bill of exceptions has been filed, that it will be forwarded to the Supreme Court, and will be heard in that court at the-term thereof. This notice shall be sufficient to authorize the Supreme Court to hear and determine said case, and *154 the judgment made therein shall bind the defendant so far as his assets in this State are concerned.” This direction of the statute has been specifically and exactly complied with by the clerk in the present instance. The motion to dismiss can not be sustained, and the case must be considered upon its merits.
The first question which arises in this case is as to the jurisdiction. It appears that W. Y. Harber is a citizen of Commerce in Jackson County, Georgia, and John J. Iiarber is a citizen of Fulton County. Hall County is the situs of the administration of the estate of G. W. D. Harber, for he resided in that county at the time of his death, and died there. The action is by equitable petition of a ward against two guardians, for an accounting; and incidentally the petition seeks to set aside a decree of another court affecting her, on the ground that the decree was obtained by fraud. The suit was brought in Fulton County against W. Y. and John J. Harber, not only as executors of the will of G. W. D. Harber, but as guardians for petitioner both before and after she reached her majority, and also as trustees for certain estates created by her father’s will, in which she is interested. The Civil Code, § 5527, declares: “All petitions for equitable relief shall be filed in the comity of the residence of one of the defendants against whom a substantial relief is prayed.” Construing this section, it was held in Shropshire v. Rainey, 150 Ga. 566 (104 S. E. 414), that where two executors resided in different counties, the superior court of either county has jurisdiction of an equitable case praying substantial relief against both. So this suit was not demurrable for want of jurisdiction. It was held, in Brown v. Wilcox, 147 Ga. 546 (94 S. E., 993) : “A petition praying for the cancellation of a deed may be brought in the county of the residence of either the grantor or the grantee. If at the time of filing such petition the grantor be dead and there are two qualified executors of his will, who reside in different counties, the petition may be brought against the executors in either county. . . Where in such' a case the petition alleges that the executors refused to execute the will according to its terms, one of them being under the dominating influence of the other, and there is a prayer for the removal of both executors on account of failure to act, and for the appointment of a receiver to take charge of the estate and to execute the will, the superior court of the county of the residence of either *155 executor has jurisdiction of the suit. Accordingly, the superior court of the county of the residence of one executor, other than that in which his coexecutor resides, and where the testator died and where the administration is, has jurisdiction of the case.” See also Wimberly v. Ross, 152 Ga. 258 (109 S. E. 500) ; Williams v. Haddock, 165 Ga. 168 (140 S. E. 373); Bruce v. Neal Bank, 147 Ga. 392 (94 S. E. 241).
In Giles v. Cook, 146 Ga. 436 (91 S. E. 411), this court held that “A court of equity may set aside a judgment procured by fraud.” “The jurisdiction of courts of equity to vacate judgments obtained by fraud is too well recognized to require discussion. . . Judgments which may be vacated in equity on account of fraud are not confined to judgments rendered by the superior court.” From this it appears that the jurisdiction in equity is determined by the residence of any one defendant against whom substantial relief is prayed; and that where coexecutors reside in different counties, the action may be brought in the county in which either executor resides. Under the ruling last cited, if in obtaining substantial justice it becomes necessary that a judgment obtained in one superior court should be vacated because obtained by fraud, then if one or both of the coexecutors reside in a county different from that in which the original judgment was rendered, the superior court of either of the counties, which has jurisdiction by reason of the residence of a proper defendant (either of the coexecutors), has jurisdiction to set aside such judgment fraudulently obtained in another county: In other words, while ordinarily a judgment rendered in Hall County might be perfectly good — and would be unless successfully attacked upon the ground of fraud, nevertheless the superior court of Fulton County would have jurisdiction if either executor, trustee and guardian reside in that county. This is not a proceeding to arrest or set aside a judgment for defects appearing on the face of the record, but is a suit seeking to set aside the formal judgment as incidental to the relief prayed, which is a general accounting and settlement of all the matters involved which are referred to in the petition. No defects appear on the face of the record in Hall superior court. However, that record does not disclose that W. Y. Harber withheld some $35,000 from the assets of a partnership in which the petitioner is interested, and that lie and John J. Harber had committed other frauds, as *156 alleged in the petition, nor does it appear upon the Hall County-record that false and fraudulent promises were made by the defendants to induce the agreement by reason of which petitioner discharged her attorney and consented for the defendants to select a different attorney for her. As said in Dugan v. McGlann, 60 Ga. 353: “A-judgment may be vacated for fraud, accident, or mistake, unmixed with the negligence or fault of the complaining party, by decree in chancery, or in a court of law with appropriate pleadings, but can not be set aside on either of those grounds on motion.” It may be remarked in passing that the demurrer is not itself good as a plea to the jurisdiction; for, while averring that the superior court of Fulton County has no jurisdiction, it does not state what other court, if any, has jurisdiction. The Civil Code (1910), § 5666, provides: “In all pleas to the jurisdiction of the court, it must appear that there is another court in this State, which has jurisdiction of the case.” The court did not place its decision sustaining the demurrer and dismissing the action upon any lack' of jurisdiction, but upon the ground that the court was of the opinion that the petition failed to set forth facts upon which it would be authorized to set aside the judgment complained of.
So the real question as to the merits of the demurrer must be determined upon other principles. “A general demurrer goes to the whole pleading to which it is addressed, and should be overruled if any part thereof is good in substance. The bad part in pleading does not make the whole bad; the good part makes the whole good enough to withstand a general demurrer.” Blaylock v. Hackel, 164 Ga. 257-258 (5) (138 S. E. 333). As ruled by Mr. Justice Lamar in Hudson v. Hudson, 119 Ga. 637 (46 S. E. 874), following the ruling by Chief Justice Bleckley in Lowe v. Burke, 79 Ga. 164 (3 S. E. 449), “A demurrer going to the whole bill should be overruled if any part of the bill is sustainable.” What Chief Justice Bleckley said in the opinion in the Lowe case is applicable to the case at bar: “Thus, where the bill is good as to account and partition, though it may be bad as to the attack it makes on a judgment lien on the premises, the bill will not be dismissed. We do not enter into the case so far as this judgment lien is concerned; for if that subject-matter ought to be eliminated, the demurrer should have gone to that part of the bill alone, and to the relief sought respecting it. The demurrer being to the *157 whole bill, and there being good matter for equity to deal with, it was proper to overrule the demurrer. 1 Ga. 376; 43 Ga. 13.” In Cox v. Duckworth, 156 Ga. 647, 649 (119 S. E. 689), Presiding Justice Beck said: “That the petitioner failed to set forth a case for the issuance of the writ of ne exeat, or for the requirement that the defendant give bond, might have been grounds for demurrer to the paragraphs of the petition in which allegations are made appropriate in an application for the writ of ne exeat; but inasmuch as the petition shows that the complainant and the respondent, after their marriage, had been divorced, that both had remarried, that the decree in the divorce proceedings made provisions for the applicant and the child, and that the complainant is seeking to compel payment only of that part of the allowance made in the decree for divorce which she claims is due for the support of the child, and which defendant had failed to pay for several months, the motion to dismiss the entire ease should have been overruled; and the order of the court to this effect was not error.” It was ruled: “The petition in this case shows a plaintiff, a defendant, a duty owing by the defendant to the party for whom the plaintiff sues, and a breach of that duty, rendering the defendant liable under the law; and the court did not err in overruling a general demurrer to the petition, although it contains allegations not appropriate to this action but to an action of a different nature.” The allegations in paragraphs 31, 32-, 33, and 31 clearly enable this petition to withstand a general demurrer. The final decree in Hall superior court was not a final accounting, because the copy óf the decree attached to the petition shows that the guardians and the defendants, W. T. Harber and John J. Harber, are required to account to this plaintiff and the others interested, for property over which they, had control. The petitioner alleges that no such account has been made, though at the same time disputing the validity of said decree and of the agreement which she entered into, and which she alleges were obtained by fraud. So we think that the trial judge erred in sustaining the general demurrer.
As to the limitations of actions against guardians, the Civil Code of 1910, § 3084, declares: “No final settlement made between the guardian and ward shall bar the ward, at any time within four years thereafter, from calling the guardian to a settlement of his accounts, unless it is made to appear that the same Avas made *158 after a full exhibit of all the guardian’s accounts, and with a full knowledge by the ward of his legal rights.” However, prior to the adoption of the Code, a provision was made (Acts 1855-6, p. 236, Civil Code, § 4380) for the operation of a different rule, where, “if the defendant, or those under whom he claims, has been guilty of a fraud by which the plaintiff has been debarred or deterred from his action, the period of limitation shall run only from the time of the discovery of the fraud.” While it has been held that a failure to exercise ordinary diligence which would have resulted in the discovery of the fraud is a good defense to this action (Lillie v. Reynolds, 101 Ga. 594, 28 S. E. 919; Bennett v. Byrd, 139 Ga. 25-7, 76 S. E. 568), still the relation of trust and confidence may justify the failure to exercise ordinary diligence. Bennett v. Byrd, supra. In the present case the plaintiff is a younger sister of the executors, her guardians and trustees of property in which she is interested. She had a right to rely upon them to divulge all the property belonging to her which they should have taken charge of during their guardianship, and for which they should have accounted at the termination of her minority. As said by Mr. Justice Lewis in Short v. Mathis, 107 Ga. 807 (33 S. E. 694) : “A failure to employ the means necessary to discover fraud will often be excused “when the plaintiff has been lulled into a sense of security by reason of a relation of trust and confidence between himself and the defendant, rendering it the duty of the latter to disclose the truth, and when it also appears that because of this confidence the plaintiff was actually deterred from sooner discovering the fraud.’ Kirkley v. Sharp, 98 Ga. 484 [25 S. E. 562]. It is difficult to conceive of a more confidential relation that can exist between two persons than that of guardian-and ward, in so far as the property rights of tire latter are concerned. While the petition in this case might have been fuller in specifying how it was that plaintiff’s title to this property became lost and how it was that she did not become sooner apprised of the facts set forth, yet there was no special demurrer on any of these grounds; and the petition setting •forth a substantial cause of .action, we think the court erred in dismissing the same on general demurrer.” In that case it was ruled: When there was a settlement between the guardian and ward after the latter had arrived at age, and on account of the relation between the parties the ward reposed special confidence and trust in *159 her guardian, believing that he had made a full showing for all the property owned by her, but when she, several years afterwards, discovered that she had interests in certain real estate of which her guardian knew before and at the time of settlement and had fraudulently concealed from her, and had also, by fraudulent collusion with a party who had no interest in the land, suffered such stranger to the title to remain upon the premises, and, in a year after the discovery of such fraud, the ward instituted her suit against the guardian for the value of the land and profits thereon which she had lost through this negligent conduct of her guardian, her action was not barred by any statute of limitation.
In Adams v. Reviere, 59 Ga. 793, it was said: “On a plea by the guardian that she had settled with her ward, the question is not whether the jury believed that the ward had received in the settlement as much as she was entitled to receive from her guardian; but the issue is, was she fully cognizant of the condition of the estate and of its management by her guardian, and did she settle with full knowledge thereof, and without mistake on her part, or imposition or fraud on the part of the guardian; if she did so settle, and at the date of the settlement was of full age, and acted with her eyes open to the facts of the case, she will be concluded by the settlement, though she seeks to open it in less than four years from its date; but if she was ignorant of the facts, or mistaken, or defrauded, she will not be concluded.” In Stidham v. Sims, 74 Ga. 187, it was held: “If, after the ward arrived at full age, the guardian or trustee settled with her and took her receipt .and acquittance from all further liability to her, and if this was done without fraud, she would have to proceed within four years after the Settlement was made to open the'same; otherwise she would be barred under § 1847 of the Code [1910, §-3084], If the settlement took place on account of the fraudulent conduct and misrepresentations of the trustee, whereby the cestui que trust was induced to make it and to give the . . acquittance to her trustee, the statute of limitations would run only from the discovery of the fraud, and in that case it would be ten years.” To the same effect was the ruling in Griffin v. Collins, 122 Ga. 102-109 (49 S. E. 827). In this ease, the alleged check which purported to be a final settlement of the account was dated June 14, 1928, and the suit was brought on May 5, 1930; and it will be noted that the statute *160 runs only from tlie time of settlement, and not from the time the ward reaches majority. So long as the guardians continue to act, they must account as such, and the bar of the statute dates only from the time of the purported settlement.
So far as we have examined, the outside authorities concur with the rulings in the cases cited. “When the ward has come of age, he is sui juris and legally competent to adjust his affairs with the guardian. If a settlement of the account is made between them, without fraud or abuse of the guardian’s position over^the ward, and the amount agreed to be due is paid over to the ward, it is a legal discharge of the guardian. But the relation of authority on one side and confidence on the other, which had but just terminated, exposes such settlement to the severest scrutiny of any court which has occasion to pass upon it; and the presumption is against its validity, and it will not be held binding upon the ward unless the evidence affirmatively shows that the ward acted deliberately and upon full information, and that the guardian exercised entire good faith.” 12 R. C. L. 1150 (41). “In a suit to set aside1 a guardian’s final settlement by which' securities were awarded to the ward, based on the fraud of the guardian, a finding that the guardian did not seek to deceive his ward, and that he gave the ward all the information he had regarding the securities, does not defeat the suit, tbAquestion not being whether there was intentional wrong, but whether there was a failure to comply with the law established for the protection of wards, and the ward being entitled to be informed not only of the facts, but of his rights with reference thereto.” Scoville v. Brock, 69 Vt. 449 (65 Atl. 577, 118 Am. St. R. 975). “Where a guardian is the parent of the ward, a transaction between them entered into a few days aítér the ward' has attained full age, and while the relation of guardian and ward continues, which prejudicially affects the interests of the ward, is constructively fraudulent, and the guardian has the burden of proving that the transaction proceeded from the independent and uninfluenced will of the ward.” Baum v. Hartmann, 226 Ill. 160 (80 N. E. 711, 117 Am. St. R. 246). “Equity will not permit transactions between guardian and ward to stand even when they occur after majority, if the intervening period is short, unless the fullest deliberation by the ward and the utmost good faith by the guardian is shown, as the latter’s influence is *161 still presumed to affect the transaction, especially if all of his duties have not ceased, so that the guardian can not procure an acknowledgment of settlement from his ward shortly after her majority, and a written direction to the probate court to discharge the guardian, without a just and full account or disclosure of every fact necessary to inform the ward of the true condition of the accounts. In an action by a former ward, to set aside a settlement made by the guardian shortly after the ward became of age, the burden was on the guardian to show that he dealt fairly with her and fully communicated every fact to her which might affect her assent to the settlement.” Willis v. Rice, 157 Ala. 252 (48 So. 397, 131 Am. St. R. 55).
“A female ward, on reaching majority, at the request of her father, who was her guardian, and at the instance of one of the sureties on his bond, without any legal advice, or being apprised of the real character of her act, signed a release reciting that the guardian had paid to her the whole amount of her estate, which was not in fact paid. Held, that such release was presumptively fraudulent, and could not constitute a defense to an action on the bond in favor of the guardian or the sureties. . . When a female ward immediately upon coming of age signs a release of her guardian (her own father) and his sureties at their request, and within the time allowed for suit on the bond files a bill in equity to set such release aside on the ground of fraud, her right of action will not be lost by laches, as against the guardian or the sureties, although the bill is not filed until nine years after the execution of the release, and four years after she has been advised of her rights in the premises.” Carter v. Tice, 120 Ill. 277 (11 N. E. 529). “A guardian may acquit himself by an outside informal settlement with his ward, but the' guardian who relies upon such a settlement must clearly show that he made a full disclosure of everything to the ward. . . The presence and assistance of an independent legal adviser, representing the ward, at the time of the settlement between guardian and ward, may, if the facts warrant, remove the imputation of undue influence by the guardian over the ward, but such independent counsel and advice will not relieve the guardian of the necessity of making a full disclosure; and where a guardian settles with his ward and the ward is represented by counsel of his own selection, but the guardian fails to disclose facts *162 not shown by his reports to the probate court, and of which the ward or his counsel have no knowledge, such release and settlement will be set aside, where it does not appear that the ward received substantially all that he was entitled to.” Harrison v. Harrison, 21 N. M. 372 (155 Pac. 356, L. R. A. 1916E, 854).
The learned trial judge appears to have been of the opinion that the setting aside of the agreement and the decree were the main objects of the bill, and that sufficient facts were not alleged to authorize the court to entertain the same. Perhaps he was of the opinion that the allegations as to fraud were insufficient. No matter what reasons influenced the court in sustaining the general demurrer, the cause must be remanded for another hearing. Aiid since the case must be tried again, it would appear to be necessary for this court to pass upon the question whether or not the facts alleged are sufficient to set aside the decree and agreement. As a matter of law, the statements of the petition assailed by the demurrer must be conceded not only to be such as that the petitioner can prove them, but conceded to be true. Upon the trial these allegations must be established. “The judgment of a court of competent jurisdiction may be set aside by a decree, for fraud, accident, or mistake, or the acts of the adverse party, unmixed with the negligence or fault of the petitioner.” Civil Code (1910), § 4584. “The judgment of a court of competent jurisdiction may be set aside by a decree in chancery, for fraud, accident, or mistake, or the acts of the adverse party unmixed with the negligence or fault of the complainant.” § 5965. In matters of fraud the party aggrieved has the right to go into either a court of equity or law for relief; and having gone into equity, he can' not be sent back to a court of law, although his remedy there may be equally adequate. Griffin v. Sketoe, 30 Ga. 300. “Misrepresentation is one of the grounds on which equitable relief may be invoked in regard to judgments. It has been said that all deceitful practices in depriving or endeavoring to deprive another of his known right by means of some artful device or plan contrary to the plain rules of .common honesty constitute fraud. By this term is meant fraud perpetrated by some artifice or contrivance of the party or person benefited, whereby in the course of the trial, or in entering judgment, the injured party or the court has been imposed upon or betrayed into inattention and deceived. The rule is that equity will *163 grant relief where by deceit and fraud a successful litigant prevents his adversary from presenting the latter’s cause of action or defense.” 15 R. C. L. 764. Our court, through Mr. Justice Jackson, said the same thing in Markham v. Angier, 57 Ga. 43, as follows : “Equity will relieve against a judgment which was obtained by inducing the defendants thereto to withdraw an equitable plea they had filed in the case, by a promise of the plaintiff that if such plea were withdrawn he would do the equity set up in the plea, and would enter into writing to that effect, all of which he failed to do.” The petition alleges that the decree was based on the report made by the auditor, and plaintiff alleges she filed exceptions to the report of the auditor. If she had. been permitted to pursue these exceptions, they should have been sustained; and yet it is alleged that with the exceptions pending, and by means of false and fraudulent representations and promises as set forth in paragraphs 20 and 21, and on account of her necessity, she entered into an agreement whereby the figures as fixed by the auditor, and the holdings of the auditor, could be made the judgment of Hall superior court. The relationship of the petitioner to the defendants was not only that of younger sister of two older brothers, but that of minor ward to them as her guardians. Under these circumstances, if by false promises and fraud perpetrated upon her, in her trustfulness and confidence based upon close relationship, she was misled and prevented from pursuing the defense which she had filed, such conduct would be a fraud which would authorize the setting aside of the judgment rendered in Hall superior court. It is said in 15 R. C. L. 765: “One of the most frequently recurring forms of fraud on the part of one litigant against the other, entitling the latter to relief in equity against the judgment finally entered, is the making of some agreement or representation for the purpose of preventing an appearance or defense in the original action and reliance upon which has had the effect intended.” The petition also alleges as a fraud that the defendants, as her guardians, concealed from petitioner material facts. “Concealment of material facts may in itself amount to a fraud, . . when, from any reason, one party has a right to expect full communication from the other.” Civil Code (1910), § 4114. This doctrine is not only sound Georgia law, but is almost universally recognized. “ Concealment of material facts for the purpose of securing a *164 judgment may amount to a fraud warranting interference by a court of equity.” 15 R. C. L. 766. It is alleged in the petition that W. Y. Harber concealed from the court and from this plaintiff assets of the value of $35,000 in which plaintiff was interested, and which it was the duty of the said W. Y. Harber as her guardian to protect; and that she did not know of this until April 30, 1929, six days before the petition in this case was filed. It is alleged, as to the decree: “That said decree is void and fraudulent in that: (a) By its terms it was provided that said W. Y. Harber was permitted to draw of the corpus of W. Y. Harber and Company, and before a distribution to the other heirs, the sum of thirty-seven thousand, three hundred, seventjr-four, and 50/100 ($37,374.50) dollars, representing a half interest, not in the profits of the business, but in the business itself, (b) That by said decree the interest of plaintiff in said Harber Merchandise Company was established at twelve thousand, fifty, and 75/100 ($12,050.75) dollars. By said decree the said John J. Harber and W. Y. Harber were allowed as salaries nineteen thousand, five hundred ($19,-500.00) dollars, when as a matter of law and as partners said W. Y. Harber and John J. Harber were not permitted to charge for their services in the absence of a written agreement, and no such written agreement was ever presented to the court.” It is alleged that the decree was entered at a time when she was not represented by counsel, or herself present in person; and that it was provided that the notices required by the decree should be sent, not to the plaintiff or her counsel, but to Mr. J. G. Collins, and to the firm of which Mr. C. N. Davie was a member. The decree left many matters in which petitioner was interested for future disposition, and properties not then sold were to be sold, the sales to be presented to the court, and the approval of the court was to be obtained in such matters; and yet it is provided in the decree that any notice of such proceedings as were required would be sufficient if the firm of Jones, Davie & Eeed should be notified, when, so far as appears from the petition, that firm had never represented the plaintiff and had no connection with the case, and C. N. Davie, who is alleged to have been previously employed by plaintiff, is alleged to have been discharged several months before the decree was entered.

Judgment reversed.

All the Justices concur, except Bech, P. J., absent for providential cause.