20221.   WHIPPLE *et al. v.* COUNTY OF HOUSTON *et al.*

ARGUED SEPTEMBER 9, 1958—DECIDED NOVEMBER 7, 1958.

534

*Frank C. Jones, Jones, Sparks, Benton & Cork,* for plaintiffs in error.

*Sam M. Mathews, Eugene Cook, Attorney-General, E. J. Summerour, Paul Miller, Assistant Attorneys-General, John E. Hogg, Deputy Assistant Attorney-General,* contra.

DUCKWORTH, Chief Justice. ■ This four-count petition, together with the exhibits attached thereto and made a part thereof, is voluminous and consequently difficult to evaluate without a simultaneous consideration of the statutory law embodied in Code (Ann.) Ch. 95-26 (Ga. L. 1955, pp. 124, 131).

The real complaint of the petition is the construction of the road by making a fill of a height of from 25 to 40 feet above the petitioners' abutting land and the damages resulting therefrom, together with an encroachment upon the petitioners' land not embraced in the right-of-way. The petition does not charge that the construction causing the damages complained of is either improperly or negligently done. Consequently, the petitioners' right to complain thereof is precluded by the condemnation proceedings unless and until they are set aside. The statute plainly provides that the assessors shall assess consequential damages to the property not taken. Code §§ 36-504, 36-505. The decisions in *McArthur* v. *State Highway Department*, 85 *Ga. App.* 500 (69 S. E. 2d 781), *Central Georgia Power Co.* v. *Mays*, 137 *Ga.* 120 (72 S. E. 900), do no more than allow a recovery for damages resulting from negligent and improper construction. Construction that is done with due care and is proper is not grounds for recovery for damages to the remainder of the property of the condemnee. The assessment of compensation for land taken covers all damages whether foreseen or not which results from a proper construction. *Gilbert* v. *Savannah, Griffin &c. R.*, 69 *Ga.* 396. See, on facts similar to the complaint here, *State Highway Board* v. *Shierling*, 51 *Ga. App.* 935 (181 S. E. 885), holding that the judgments on condemnation do preclude any future claim by the owner of consequential damages to the remaining property resulting from a careful and proper construction.

■ Therefore, it is imperative that the prayer for cancellation and setting aside of the award and judgment of condemnation be sustained if the petitioners are to be allowed to recover for alleged damages resulting from the manner of construction, which is making a fill in heights from 25 to 40 feet in front of the owners' remaining lands.

This relief is sought upon the basis of mistake as described and contemplated in Code §§ 110-710, 37-202, 37-203, 37-206, 37-219, and 37-220. Counsel cite *Callan Court Co.* v. *C. & S. Nat. Bank*, 184 *Ga.* 87, 129 (190 S. E. 831), for a definition of a mistake relievable against in equity. The mistake thus relievable is described in that decision as "an erroneous mental

condition, conception, or conviction induced by ignorance, misapprehension, or misunderstanding of the truth, but without negligence and resulting in some act or omission done or suffered erroneously by one or both the parties to a transaction, but without its erroneous character being intended or known at the time." Agreeing in substance with the foregoing definition and ruling are 30A Am. Jur. 713, § 769, and 49 C. J. S. 723, § 365. See also *Pearce & Co.* v. *Chastain*, 3 *Ga.* 226 (46 Am. D. 423); *Pollock* v. *Gilbert*, 16 *Ga.* 398 (60 Am. D. 732); *Brewer* v. *Jones*, 44 *Ga.* 71; *Simmons* v. *Martin*, 53 *Ga.* 620; and 30A Am. Jur. 710, § 765, "Judgments." These authorities require a ruling that, if these petitioners were, due to mistake unmixed with negligence, prevented in the condemnation proceeding from proving as consequential damages the construction of the fill here complained of and its resulting injury to the abutting property, and that the assessors who fixed the damage and the court which approved the valuation were kept ignorant of an intention to construct the fill, good grounds are shown for setting the award and judgment of condemnation aside.

To construe correctly the acts and conduct of the Houston County Commissioners and their attorney in connection with this matter, it is essential to have in mind portions of Code (Ann.) Ch. 95-26 (Ga. L. 1955, pp. 124, 148). This act provides that the State Highway Department shall initiate all rural road projects and the Authority may accept and agree to finance them or reject them. The act also provides that the Highway Department shall draw all plans and specifications and supervise construction. The Highway Department has power to acquire the right-of-way by condemnation. Code (Ann.) § 95-2606 (c). The governing authorities of any county are authorized and empowered to convey to the Authority any real property or any right-of-way now or hereafter owned by the county to be used as a rural road. Code (Ann.) § 95-2606 (b).

With the foregoing relevant rules of law in mind, we consider the alleged facts relating therto. First, the Commissioners of Houston County, although having no title, executed a deed purporting to convey the right-of-way here involved to the Rural Roads Authority. Then their county attorney executed his

certificate that the deed conveyed good title. This same county attorney, J. W. Bloodworth, on April 6, 1956, wrote the owners, who are the petitioners in this case, enclosing the county's offer to buy the right-of-way for $1,000, and requesting an acceptance or rejection, stating that the proposed road would enhance the lands of petitioners abutting on that road, and advising further that he had been instructed by the county authorities to institute condemnation proceedings in the name of the State Highway Department if the offer was rejected. On April 14, a petition in the name of the State Highway Department, signed by Eugene Cook, Attorney-General, and the county attorney, J. W. Bloodworth, as attorneys for the petitioner, was filed, praying for condemnation of the right-of-way.

The instant petition alleges that the appraisers, duly appointed, determined the damages, both actual and consequential, which would result if the road would be constructed at grade level; that both the petitioners and the assessors believed and acted upon the assumption that the road would be constructed at the existing elevation of petitioners' property; and that the petitioners had been repeatedly advised by the county commissioners and the county attorney that the road would be at grade level. This apparent careless use of the power of eminent domain was undeniably done in conjunction with the county, and with the knowledge of or chargeable with knowledge of the representations of the county attorney, who represented both the county and the Highway Department, that the road would be at grade level and hence beneficial to the remaining lands abutting thereon. The petition treats these representations as not having been made with fraudulent intent but rather in good faith because of ignorance of the true plans and facts held by the Highway Department. We pose this question: Would even an experienced lawyer have known exactly who was the true condemnor, and if the attorney Bloodworth was not attorney for both the county and the Highway Department? It is clear that he represented both and spoke for both. These owners were thus confronted with an unbroken chain of acts and steps to obtain this right-of-way and an attorney representing both the county and the Highway Department at every stage, representing that

a paved road at grade level would be constructed on the right-of-way, enhancing the value of their property. It could not reasonably be required of these owners that in order to show diligence they should have disbelieved the condemnor in its representations through its attorney as to the character of the construction intended. The petition shows that, if the Highway Department had on file specifications that called for a fill of from 25 to 40 feet, it did not disclose this fact to the appraisers or to the owners, or even to Mr. Bloodworth, its attorney of record in the case. Therefore, a case of either mutual mistake, or mistake due to the fault of the opposite party, is clearly shown, and very great injury has resulted therefrom to the owners. This court can not hold that the owners, in order to · show diligence, should have proven a manner of construction which was disclaimed by the attorney for the condemnor.

The petition shows great damages suffered by the owners, damages that they were prevented from proving before the appraisers solely by an honest mutual mistake, unmixed with negligence, or a mistake due to the fraudulent concealment of the condemnor unmixed with negligence or fault of the owners. Only equity can relieve against this unjust injury. Equity has that power. Courts of equity are courts of conscience. Equity considers that done which ought to be done and decrees accordingly. Another trial will do no more than require the State Highway Department to pay for what it takes from these private citizens. The Constitution, art. 1, sec. 1, par. 2, solemnly declares that "Protection to person and property is the paramount duty of government, and shall be impartial and complete." Code (Ann.) § 2-102. Here the State Highway Department and its attorneys are acting for the State and exercising the sovereign power of eminent domain, to take private property for a public use. When the State, through any of its agents, takes or damages private property for public purposes, the Constitution lays upon it the imperative duty to *first* pay just and adequate compensation therefor. Constitution, art. 1, sec. 3, par. 1 (Code, Ann., § 2-301). These are plain duties explicitly laid upon the State and all of its agents. Their sole purpose and object is the protection of the most humble person

against tyrannical use or abuse of the powers of the State. A fair observance of these requirements would prevent the State and its agents, who are bound by the State's constitutional obligations, from desiring, intending to violate or actually violating the rights of the citizen. If by mistake the constitutional protection is denied the citizen, and it is not voluntarily rectified, courts of equity will command its rectification. It should never be a burden but rather a welcomed privilege for the State to accord fully these protections to the individual.

The plaintiffs have paid into court the amount awarded, which they accepted before they learned that the high fill now complained of would be constructed. They have done equity and now seek equity. The allegations are sufficient to warrant the relief of cancellation of the award and the judgment of condemnation, and to entitle the petitioners to a judgment awarding them compensation for direct and consequential damages. With this cancellation they are reinvested with title and consequently are entitled to have the deed from Houston County to the Rural Roads Authority canceled. The judgment sustaining the demurrers and dismissing the petition is erroneous.

*Judgment reversed. All the Justices concur.*