## 41754. GEORGIA DEPARTMENT OF TRANSPORTATION v. WOODARD et al.
### (331 SE2d 557)

HILL, Chief Justice.

This is an action to quiet title to land taken by condemnation. Although the essential facts in this case span a half century, the parties do not disagree as to what the facts are. They disagree markedly, however, as to their legal effect.

By deed dated November 22, 1930, not recorded until February 12, 1952, Sara Woodard granted Fannie Woodard a life estate in certain real property, with remainder over to the heirs of her body. By deed dated April 4, 1934, not recorded until February 11, 1952, Fannie Woodard deeded the property to Willie Woodard, purportedly in fee simple.

On February 13, 1952, the Department of Transportation (DOT) filed an in rem condemnation proceeding against 1.919 acres of the land described in the above-mentioned deeds, and against Willie Woodard individually, for the purpose of constructing U. S. Highway 1, a major four-lane roadway, part of the state highway system. None of Fannie Woodard's eleven children were given notice of the proceeding, and most of them were minors at the time. On February 28, 1952, judgment was entered on the condemnation petition granting DOT fee simple title and awarding Willie Woodard the sum deposited. The property has been used continuously for public road purposes since construction began in 1952. The youngest of Fannie Woodard's children reached majority in 1969.

On July 9, 1982, Fannie Woodard's eleven children filed an action to quiet title to the property at issue. Pursuant to OCGA § 23-3-66, a hearing was held before a special master. At the time of the hearing, Fannie Woodard was still alive; she subsequently died before the trial court's decree.

In his order, the special master found as facts that: (1) Willie Woodard's life interest in the property, which he received by deed from Fannie Woodard, passed to DOT under the 1952 condemnation decree; (2) Fannie Woodard's eleven children each had a remainder interest in the property;[1] (3) none of the children were named as parties or served with process in the condemnation. The special master

---

[1] Three of the eleven children apparently had conveyed their interest to one brother. That does not affect the determination of this appeal.

then entered these conclusions of law:

(1) The 1952 condemnation did not divest the remaindermen of their interest;

(2) the remaindermen are not barred by laches, since remaindermen are not required to proceed against a life tenant during the pendency of the life estate;

(3) nor are the remaindermen barred by prescription because adverse possession does not run against remaindermen during the pendency of a life estate;

(4) sovereign immunity is not a defense to an action to quiet title, and there is no statute of limitations on the bringing of an action to quiet title.

The trial court incorporated the special master's report into its decree, and adopted the findings of fact and conclusions of law therein. The court found and held that, upon Fannie Woodard's death, the fee simple interest in the property at issue vested in her children.

DOT appeals, urging three enumerations of error which challenge the first three conclusions of law made by the special master and adopted by the trial court. DOT contends first that because the 1952 judgment vesting title in DOT was in rem, the trial court erred in finding that the plaintiffs have fee simple title. Rather, DOT contends, while they no longer have title, they do have a right to compensation for the property which was taken. Plaintiffs respond that the condemnation judgment did not vest fee simple title in DOT because the remaindermen were known to DOT by virtue of the recording of the deed from Sara Woodard and because the statutory requirement applicable to the condemnation proceeding that notice be served upon the owners of remainders (now OCGA § 22-2-20; see also OCGA § 22-2-21 as to minors) was not met.

A judgment in a condemnation proceeding such as this consists of two distinct pronouncements, one against the property (in rem) vesting title in the condemnor, OCGA § 22-2-130, the other awarding just and adequate compensation to the condemnee or condemnees, OCGA § 22-2-130, supra, to be followed by a determination of the interests of the condemnees or other claimants and distribution of the award according to such interests, OCGA § 22-2-138. Although the condemnees may appeal the amount of the award, OCGA § 22-2-136, title vests in the condemnor upon entry of judgment and payment of the award, OCGA §§ 22-2-81, 22-2-85, subject to the condemnor's obligation to pay any greater award entered upon the appeal, OCGA §§ 22-2-82, 22-2-83. That title has been vested in the condemnor is not reviewable upon the appeal. See *Johnson v. Fulton County*, 103 Ga. App. 873 (121 SE2d 54) (1961).

It is true that a condemnation judgment may be set aside, for

cause, in a suit brought for that purpose within three years of the entry of judgment. *Chattooga County v. Scott*, 215 Ga. 68 (108 SE2d 876) (1959); *Whipple v. County of Houston*, 214 Ga. 532 (105 SE2d 898) (1958); OCGA § 9-3-21. This is not a suit to set aside a judgment brought within three years.

In *Dept. of Transp. v. Garrett*, 154 Ga. App. 104 (1) (267 SE2d 643) (1980), relied upon by both sides, the court said: "It must first be stated in favor of the view taken by the Department of Transportation that these proceedings are in rem, proceeding primarily against the property itself although subject to the claims of any person owning an interest therein. As to such proceedings it is generally held that in rem proceedings involving eminent domain takings, where there has been an error as to the true owner of the property such that the true owner has not in fact been given notice and an opportunity to be heard, will not absolutely void a completed proceeding, and the true owner cannot have the judgment set aside, but is relegated to a claim in personam based on his right to compensation. 1 Nichols, Law of Eminent Domain, 3rd Ed., § 1.142 [3] and [5]."

*Dept. of Transp. v. Garrett*, supra, is not otherwise applicable here because the award apparently was not paid into court and no judgment of condemnation was entered, and hence title did not vest in DOT.

Although owners of the property condemned who were not made parties to the condemnation proceeding are or may be entitled to monetary relief notwithstanding the fact that the proceeding was in rem, such owners are not entitled to set aside an in rem condemnation judgment and reacquire title when the condemnor took possession under a valid right of entry, remains in possession, and has made improvements which are being used for the public benefit. *Charleston &c. R. Co. v. Hughes*, 105 Ga. 1 (3-5) (30 SE 972) (1898); *Dept. of Transp. v. Garrett*, supra; *United States v. 125.2 Acres of Land*, 732 F2d 239, 243 (1st Cir. 1984); 1 Nichols, The Law of Eminent Domain, 3d ed., § 1.142 [2] [3] [5] (1981).

The pertinent facts in *Charleston &c. R. Co. v. Hughes*, supra, are strikingly similar to the facts here. There Charles DeLaigle left certain property to his daughter, Emma, in trust for life, with remainder to her children. Emma DeLaigle's life estate was conveyed to Holt, purportedly in fee simple. A railroad instituted an in personam condemnation proceeding against Holt. Following a jury verdict as to value, the railroad paid the amount of the verdict to Holt and Holt executed a deed to the railroad, but no judgment was entered in the condemnation case. After Emma DeLaigle's death, her only child sought to institute an action to eject the railroad. The court noted (105 Ga. at 16): "A railroad corporation, being one charged by the law with the performance of certain duties to the public, is allowed, under

some circumstances, to set up rights connected with the land over which it operates its line of railway, of which an individual or an ordinary private corporation would not generally be allowed to avail itself." The court then held (105 Ga. at 17): "The current of modern authority sustains the proposition, that when a railroad company is in possession of land, using it as a right of way, although not having acquired the legal title thereto, the landowner would be estopped from ejecting the company from the premises, if it was shown either that the original entry was with his consent, or that the entry without his consent was so long acquiesced in that to allow the company to be ejected would either dismember the property of the company, or essentially interfere with its ability to discharge the public duties incumbent upon it. This, however, is subject to the qualification that the landowner is entitled to compensation for his property, and this must be ascertained and paid to him before the corporation is vested with a complete right to hold and enjoy his property as its own." The court's opinion then proceeds to review cases from other jurisdictions. The court then remanded the case for a determination of the value of the property at the time the life estate terminated, excluding the value of improvements made by the railroad, but with interest (105 Ga. at 26).

The relief we order varies from that ordered in *Charleston &c. R. Co. v. Hughes*, supra, because DOT's condemnation proceeding here was in rem, pursuant to a subsequent enactment (Ga. L. 1914, p. 92) of the General Assembly. See OCGA § 22-2-130.

*Couey v. Talalah Estates Corp.*, 183 Ga. 442 (188 SE 822) (1936), and *Boroughs v. Belcher*, 211 Ga. 273 (85 SE2d 422) (1955), relied upon by plaintiffs, are inapposite because they involved in rem judgments obtained by private parties under the land registration law; they did not involve land taken by condemnation and devoted to a public purpose.

We therefore hold that title vested in DOT under the in rem judgment entered in 1952. However, the plaintiffs are entitled to recover in a proper action and forum, and subject to such defenses as may be available to such action, compensation for their remainder interest in the property which was taken in 1952. Because a judgment for that amount should have been entered in 1952, they are also entitled to interest on any award from that date forward. The remedy thus provided accomplishes several purposes: It accords some deference to an in rem condemnation judgment; it protects the rights of the landowner yet provides a means of achieving finality as to title to property used for the benefit of the public; and it requires that which should have been done to be done. Plaintiffs' argument that the result we have reached will encourage condemnors to be careless or reckless in ascertaining the ownership of title to property to be condemned in

rem is not persuasive; if DOT had named and served plaintiffs in the 1952 condemnation proceeding, plaintiffs would have been paid out of the sum DOT paid at that time, and DOT would not be required to make an additional payment, plus interest, now.

Having found that fee simple title vested in DOT in 1952, it follows that although plaintiffs may have a claim for compensation, plaintiffs have no cause of action to remove a cloud upon their title. Thus, we need not reach the remaining enumerations of error.

*Judgment reversed. All the Justices concur, except Weltner, J., not participating.*

DECIDED JULY 2, 1985 —
REHEARING DENIED JULY 23, 1985.

*Michael J. Bowers, Attorney General, Gary H. Brakefield, Assistant Attorney General,* for appellant.
*Earl Daniel Smith, Jr., George A. Pindar,* for appellees.