A90A0887. CLAY et al. v. DEPARTMENT OF
TRANSPORTATION.
(400 SE2d 684)

BANKE, Presiding Judge.

The appellants, consisting of Robert N. Clay and the Citizens & Southern Trust Company ("the bank"), acting as trustees under the will of Clyde H. Clay, are the owners of eight commercial properties

located along a highway which the Department of Transportation determined to widen. This litigation concerns the DOT's negotiated purchase from the appellants of the additional right-of-way needed for this project along two of the properties in question. The parties were unable to reach an agreement as to compensation on the other six properties, which consequently became the subject of condemnation proceedings which are not involved in this appeal.

After the road-widening project commenced, it became evident to the appellants that the DOT intended not only to widen the highway but also to raise its grade level by approximately four feet on the side adjacent to their property, in order to create a "super-elevated curve." The appellants filed the present action to enjoin the project or, in the alternative, to recover additional compensation for the property rights which they sold to the DOT, alleging that the DOT's failure to notify them of its intention to elevate the road in this manner constituted the intentional and fraudulent concealment of a material fact materially affecting the value of their remaining property.

It is apparent without dispute that before the improvements were undertaken, the properties in question were at grade level and were fully accessible at all points along the highway. The appellants allege in their complaint that as a result of the improvements, vehicles attempting to exit their shopping center will now be required to travel "almost straight up a four-foot embankment into a four-lane highway, with unreasonable problems of visibility." The trial court denied the appellants' request for injunctive relief on the ground that construction of the improvements in question was already completed, and that ruling has not been appealed. The trial court subsequently granted summary judgment to the DOT on the appellants' remaining damage claim, concluding that in the absence of any evidence or allegation that the DOT had made an affirmative misrepresentation to them that the road would not be elevated, there had been no showing of fraud sufficient to authorize the setting aside of the right-of-way deeds. *Held*:

1. Although the issue has not been raised by the parties, there is disagreement among the members of this court over whether this is an equity case, such that appellate jurisdiction would be in the Supreme Court pursuant to Art. VI, Sec. VI, Par. III (2) of the Ga. Const. of 1983.

"The rule is that 'to make a case one for equity jurisdiction it must contain allegations and prayers for equitable relief.' (Cit.)" *Jones v. Van Vleck*, 224 Ga. 796, 797 (164 SE2d 724) (1968). Accord *Reynolds v. Hyers*, 190 Ga. 200, 202 (9 SE2d 78) (1940); *Atlantic States Constr. v. Beavers*, 250 Ga. 828, 829 (301 SE2d 635) (1983). The only request for equitable relief made by the appellants in their complaint was for an injunction to halt construction of the road im-

provements. As the denial of that request was not appealed, it follows that there is not currently any claim for equitable relief pending in the case. We accordingly hold that jurisdiction over the present appeal is in this court rather than the Supreme Court. See *Johnson v. Mut. Fed. &c. of Atlanta*, 225 Ga. 245 (167 SE2d 653) (1969).

2. " 'Fraud may exist as much in intentional concealment of material facts, as in false statements in regard to facts. One is as fraudulent as the other, if it is used as a means of deceiving the opposite party.' " *Friedman v. Goodman*, 222 Ga. 613, 623 (151 SE2d 455) (1966), quoting from *Jordan v. Harber*, 172 Ga. 139 (4) (157 SE 652) (1931). "Suppression of a material fact which a party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties *or from the particular circumstances of the case.*" (Emphasis supplied.) OCGA § 23-2-53. See also OCGA § 51-6-2.

It is apparent without dispute from the record that during its negotiations with the appellants the DOT already had in its possession plans showing the proposed grade-change elevations. However, according to all of those involved in those negotiations on behalf of the appellants (who included, in addition to Mr. Clay, an officer of the bank which was acting as co-trustee of the property and an appraiser hired by him), *none of the plans showed to them by the DOT representatives showed any grade elevations.* While one of the DOT's agents submitted an affidavit in which he averred that it was his belief that the appraiser had reviewed such plans during a visit to the DOT office, this affidavit clearly is not, as suggested by the dissent, dispositive of whether such plans were actually shown to the appellants but at most creates a factual dispute on the issue.

While the appellants and their appraiser have quite candidly acknowledged that it never occurred to them during the negotiations to ask whether a change in the existing grade level was being contemplated, they assert that the circumstances did not suggest the existence of any reason for such a change; and, in view of their collective expertise and experience in dealing with real estate, it is certainly conceivable that a jury might agree with them on this point and conclude that their failure to ask the DOT about its intentions in this regard did not constitute a failure to exercise due diligence. While the appellants have further acknowledged their awareness that an increase in elevation of up to a foot would necessarily result from the project (which, of course, called for the addition of new pavement to the existing road), such an awareness obviously would not have alerted them to the possibility that the DOT was planning a "superelevated curve." Furthermore, Mr. Clay testified that he affirmatively stated during the negotiations that it was his understanding that "this property is not going to be hurt"; and he stated that by "their

silence" the DOT representatives "indicated to me that my statement was true."

The dissent would excuse the DOT's failure to respond to this comment for the stated reason that "it is not so clear that the change in elevation 'hurt' the property to the extent that [the] DOT should have immediately appreciated that Mr. Clay's comment was incorrect. . . ." However, this is clearly a point on which reasonable minds could disagree. According to the appellants, the change in elevation has in effect dropped their property from grade level to the bottom of a four-foot embankment, and there is evidence that, whereas their parking lot was previously accessible at all points along the highway, it is now accessible only through ramps constructed by the DOT for that purpose. It is difficult to imagine how this could have anything other than a materially negative effect on the desirability and value of the property for shopping center purposes. While the appellants have not yet offered proof of the extent to which the value of their remaining property was diminished, the burden was not on them to do so at this juncture. Rather, they were entitled, as respondents on motion for summary judgment, to the benefit of any doubt on this as well as all other disputed issues in the case. See generally *Ham v. Ham*, 230 Ga. 43, 45 (195 SE2d 429) (1973); *First of Ga. Ins. Co. v. Josey*, 129 Ga. App. 14, 15 (198 SE2d 381) (1973).

The DOT relies on the Supreme Court's decision in *White County v. Wooten*, 219 Ga. 236 (132 SE2d 653) (1963), as authority for the proposition that an affirmative misrepresentation is required to set aside a right-of-way deed. In that case, the alleged misrepresentation was a statement by the county commissioner to the property owner to the effect that *"if* a paved road at the grade level would be constructed on the right-of-way that it would enhance the value of the plaintiff's property and thereby compensate him over and above the amount of money actually paid to plaintiff for his lands. . . .'" (Emphasis from original.) Id. at 240. In the present case, a paved road already existed at grade level, and no reference whatever was made by the condemnor to the possibility that its elevation might be substantially changed. The present case is also distinguishable from such cases as *Crawford v. Williams*, 258 Ga. 806 (375 SE2d 223) (1989), and *Kirven v. Blackett*, 208 Ga. 178 (65 SE2d 791) (1951), in that the alleged concealment at issue here did not concern an existing characteristic of the property which the plaintiffs could have discovered independently by such means as obtaining a survey or analyzing a soil sample. Rather, it concerned a plan for future improvements known only to the DOT and which the DOT alone was in a position to disclose or verify. Based on the evidence that the DOT's representatives not only failed to share with the appellants its plans for a "super-elevated curve" but remained silent in the face of Mr. Clay's affirma-

tive disclosure to them during the negotiations that he was operating under the assumption and belief that the improvements would not "hurt" his remaining property, we hold that the trial court erred in granting the DOT's motion for summary judgment.

3. The appellants' remaining enumerations of error are rendered moot by the foregoing.

*Judgment reversed. Deen, P. J., Sognier, Pope, Beasley and Cooper, JJ., concur. Carley, C. J., McMurray, P. J., and Birdsong, J., dissent.*

BIRDSONG, Judge, dissenting.

1. As the central issue in this appeal is whether the trial court correctly denied the equitable relief of setting aside the right-of-way deed, an issue in the general appellate jurisdiction of our Supreme Court (Art. VI, Sec. VI, Par. III (2)), I must respectfully dissent. The record shows that the trial court granted DOT's motion for summary judgment on the appellants' claims for damages after it found that the appellants were not entitled to set aside the right-of-way deed. Although the majority notes that the appellants did not seek equitable relief, the equitable relief of setting aside the right-of-way deed is essential to recovering the damages sought. See *Whipple v. County of Houston*, 214 Ga. 532, 535 (105 SE2d 898): "Therefore, it is imperative that the prayer for cancellation and setting aside of the award and judgment of condemnation be sustained if the petitioners are to be allowed to recover for alleged damages resulting from the manner of construction, which is making a fill in heights from 25 to 40 feet in front of the owner's remaining lands." Further, the enumerations of error concern whether there was sufficient evidence of fraud to warrant the trial court's refusal to set aside the right-of-way deed and the burden which should be on the DOT in such cases, and the majority opinion plainly relies on equitable authorities in reaching its holding. Therefore, as the issue is whether the trial court properly denied the equitable relief of setting aside of the right-of-way deed, it is my view that this court lacks jurisdiction over this appeal and the case should be transferred to the Supreme Court.

2. Since this court has reached the merits of the appellants' claims, I also must dissent from the majority's conclusion that Mr. Clay's statement "that we are not going to be hurt on this piece of property" creates a jury issue on whether the sale of the right-of-way was induced by fraudulent concealment. In the first instance, whether the deed should be set aside as an equity issue is to be determined by the trial court without jury (see *Golston v. Garigan*, 245 Ga. 450, 451 (265 SE2d 590)), and this case merely underscores the concern noted in *Beaulieu of America v. L. T. Dennard & Co.*, 253 Ga. 21, 22 (315 SE2d 889) about granting summary judgment on an equity issue. In

this appeal, although the trial court specifically made findings of fact and reached the conclusions of law that the right-of-way deed could not be set aside, it apparently did so under the summary judgment procedure.

Secondly, under all the evidence in this case the failure of DOT to respond to Mr. Clay's statement is insufficient to create any issue on whether the right-of-way deed was procured by fraud.

The elements of damage in a condemnation proceeding include the value of the property and consequential damage that will naturally and proximately arise to the remainder (*State Hwy. Dept. v. Kaylor*, 110 Ga. App. 46, 47 (137 SE2d 664)), and the award for the property covers all damages, foreseen and unforeseen, resulting from proper construction of the project. *City of Atlanta v. Airways Parking Co.*, 225 Ga. 173, 181 (167 SE2d 145). Therefore, the right-of-way deed in this case must be set aside if the appellants are to recover damages. See *Charles v. Cobb County*, 231 Ga. 696, 698 (203 SE2d 503); *Whipple v. County of Houston*, 214 Ga. 532, 535 (105 SE2d 898).

Central to resolution of this appeal is the nature of the representation required before a right-of-way deed may be set aside. Our Supreme Court considered this question in *White County v. Wooten*, 219 Ga. 236, 240 (132 SE2d 653), and found that a misrepresentation of the actual facts was required: "The absence of any averment that the commissioner represented that the road would in reality be constructed at grade level is the very point at which the plaintiff's allegations are distinguished from those of the plaintiffs in *Whipple v. County of Houston*. . . ." In *Whipple v. County of Houston*, supra at 538, a right-of-way deed was set aside because of either a mutual mistake of fact or a mistake resulting from the misrepresentation that the road would be built at the present level. In this appeal, of course, there is no allegation of mutual mistake and accordingly, for the appellants to prevail, there must have been an actual misrepresentation.

Nowhere do the appellants represent that DOT wilfully misrepresented that the road would be built at the existing grade and the exhibits filed by the appellants show that slopes would be constructed. Although the appellants contend DOT misled them by not responding to Mr. Clay's statement that "we are not going to be hurt on this piece of property" and that they relied on DOT's silence to mean there would be no change in elevation, the record does not support their contention. The C & S property manager's deposition clearly states that they relied on their professional appraiser in the negotiations and that they "negotiated" on the value of the property. In any event, since the appellants' affidavits in response to DOT's motion for summary judgment stated that there was no discussion about any changes in elevation, there is no basis for anyone to conclude that

there was a connection between changes in elevation and Mr. Clay's statement. Indeed, even Mr. Clay does not contend that his statement was directed toward changes in elevation.

Moreover, Mr. Clay's deposition makes clear that his comment was not a question, *but a statement.* Therefore, there is no evidence showing that DOT would know that a reply was expected, much less a reply concerning the grade of the new road. Under the circumstances, DOT's agents could not be expected to know that Mr. Clay's statement concerned elevation any more than any of the other matters negotiated.

Additionally, this record shows that eight pieces of properties were originally involved in the negotiations, that the appellants and DOT were unable to agree on compensation for six, and that on the two properties involved in this appeal the settlement was not reached until the compensation was increased on one property from $43,835 to $46,500 and on the other from $36,700 to $49,485. Therefore, it is obvious that the appellants understood that this was a negotiation process and that they did not blindly accept DOT's offers on these properties. Indeed, Mr. Clay's deposition further demonstrates that his understanding was that these negotiations were an arm's length transaction because he recognized that he reached a settlement on one of the properties because of "bad advice."

This record also shows that the appellants failed to ask about possible changes in the elevation of the road. While the appellants now assert that this was because they "assumed" that the road would be widened at the existing grade, this assertion is inconsistent with their interrogatory answers admitting that they knew there would be a grade change. The record shows that the appellants unilaterally misjudged the extent of the changes in elevation, without verifying their conclusion with DOT. Therefore, our Supreme Court's decision in *White County v. Wooten,* supra, that a unilateral mistake is not sufficient, is controlling.

Additionally, nothing in this record shows or suggests that DOT was aware of the appellants' erroneous assumptions or had any reason to believe that the appellants did not understand that the elevation would be changed. While our summary judgment procedures require us to construe the evidence in the appellants' favor and give them the benefit of any reasonable doubts (see *McNish v. Gilbert,* 184 Ga. App. 234 (361 SE2d 231)), we cannot ignore the record.

The majority relies on authority that intentional concealment or suppression of material facts which one is obligated to communicate can constitute fraud. While these concepts are valid generally, they have no application to this appeal. Nothing in this record shows or warrants the conclusion that DOT intentionally concealed or suppressed material facts.

Instead the record shows that the appellants, at best, failed to look at all the plans and failed to question DOT about elevation changes. Although they now contend this topic was vitally important, in the negotiations they did not address it despite their admission that they asked every question they could conceive of about the project.

Further, the appellants present no evidence supporting their belief that DOT should have known intuitively that Mr. Clay's statement referred to changes in elevation, and there is none in the record. The records show that DOT knew that the plans showed information that slopes would be constructed and also knew that the appellants' professional appraiser visited DOT''s office and had access to all of the plans, including the cross-sections showing elevation changes. Therefore, DOT had no reason to assume that Mr. Clay's statement was based on his unilateral misconception about the grade of the road. Moreover, since the plans showed how much the road would be elevated, there was no reason for DOT to assume that the absence of questions about the elevation meant that the appellants incorrectly assumed the road would be widened at the existing grade.

Moreover, Mr. Clay's statement obviously cannot be taken literally to mean that the property was not being hurt. His statement is contrary to the fact that the appellants hired an appraiser to arrive at the consequential damages and the fact that the compensation for consequential damages was raised on both tracts. This increase in compensation was made pursuant to the appellants' counteroffer which necessitated scrutinization of the plans to arrive at the damages.

In addition, it is not so clear that the change in elevation "hurt" the property to the extent that DOT should have immediately appreciated that Mr. Clay's comment was incorrect for even after this litigation was initiated, the appellants could not estimate accurately the damage to the property. For example, one property manager testified at his deposition that only one tenant had departed since the road was widened but he could not recall the reason given for leaving, and many of the appellants' complaints focus on noncompensable problems with access to the property during the construction project or mere inconvenience in access. See, e.g., *Department of Transp. v. Dent*, 142 Ga. App. 94 (235 SE2d 610); *R. E. Adams Properties v. City of Gainesville*, 125 Ga. App. 800 (189 SE2d 114). Without some evidence that the damage caused by the project was clear and obvious, there is no reason to conclude that DOT would immediately comprehend that Mr. Clay's statement was based on an incorrect assumption rather than review of the plans.

Moreover, the professional real estate appraiser's affidavit does not state that his opinion about the damage to the property changed

to any degree after he learned that his assumption about the level of the road was wrong. The appraiser stated earlier there were no consequential damages, and his affidavit merely stated that his estimate was based upon an incorrect assumption. He did not state, however, that DOT caused him to reach this assumption, that he attempted to verify his assumption with DOT, or that DOT withheld information or provided incorrect information. Therefore, there is no basis for holding DOT responsible for the appraiser's unilateral incorrect assumption. It can be presumed that professional real estate appraisers are competent to read plans as presented by DOT.

Under the facts of this case in which the appellants *freely admit they did nothing* to verify their assumptions about the road, the majority's conclusion that the appellants could not verify their assumption is misplaced and would play havoc with our concept of diligence. In this case, the appellants could have *asked* DOT or *looked* at the plans. According to them, they did neither. Further, the majority's conclusion that DOT should be held to a higher standard is contrary to the Supreme Court's decisions in *Wooten* and *Whipple*.

There is simply no evidence in this case from which one can conclude that DOT intentionally concealed or suppressed information about the elevation of the road. Further, this is not a case in which the appellants made a direct inquiry and DOT evaded the truth. See *Denny v. D. J. D., Inc.*, 186 Ga. App. 727, 728 (368 SE2d 329). The plans the appellants admittedly received in the appellants' own words "clearly showed" there would be a change in elevation and the appellants' discovery response admits that they simply *misjudged* the extent of the change. The record shows that the appellants failed to exercise reasonable diligence since by their admission they failed to verify whether their assumption was correct, and that DOT did not misrepresent the change in elevation.

The majority's holding that the DOT representative's belief that the appellants' appraiser reviewed all the plans for the project available in the office merely created a factual dispute since the appellants stated that none of the plans presented to them showed grade elevations is wrong on several counts. Most significantly, the appraiser's affidavit did not state that none of the plans had grade elevation on them. Secondly, the appellants' complaint and discovery responses admitted the plans they received showed that the elevation would be changed, but they mistakenly concluded there would be a one-foot rather than four-foot change in elevation.

Thirdly, the effect of the DOT representative's uncontradicted statement is to show that DOT did not conceal or suppress the change in elevation because the plans showing those changes were made available to the appellants' appraiser when he came to examine those plans. Finally, the appraiser does not contend that all plans

were not available to him. Instead, he merely asserts that he did not "recall" examining the other plans. Such convenient affidavit testimony does not contradict DOT's positive statement that the plans were there for him to examine. See *Cohen v. Hartlage*, 179 Ga. App. 847, 850-851 (348 SE2d 331). As DOT never denied that these plans were not in its possession and available to the appellants, it is difficult to comprehend how this statement supports the appellants' case. This is especially so since the appellants have never contended that they so much as asked about the elevation or that they asked and were denied access to the plans.

Further, the majority's conclusion that the appellants could have reasonably determined from the plans that there would be no change in grade level is directly contradicted by the appellants' answer to DOT's interrogatories which admitted that they expected a change in grade level but assumed that it would be one foot rather than four. Under these circumstances, it is hard to credit a conclusion they never reached.

Because of the total absence of evidence in the record that DOT concealed or suppressed material facts, the appellants' response to the motion for summary judgment was insufficient as a matter of law. "Fraud may not be presumed. . . ." OCGA § 23-2-57. Therefore, the appellants may not rely only on DOT's silence to prove that they are entitled to set aside the right-of-way deed.

Under the record of this case, the appellants failed to respond to DOT's motion for summary judgment with any specific facts showing that there was a genuine issue for trial. Instead they responded with after the fact arguments that contradict earlier positions taken by them and which do not rebut DOT's position that the plans were available for inspection and that the appellants unilaterally misjudged the extent of the proposed grade change.

Therefore, I cannot conclude that the trial court erred by granting summary judgment, and accordingly I must respectfully dissent.

I am authorized to state that Chief Judge Carley and Presiding Judge McMurray join in this dissent.

DECIDED DECEMBER 5, 1990 —
REHEARING DENIED DECEMBER 20, 1990 — 

*Chamberlain, Hrdlicka, White & Johnson, Richard N. Hubert*, for appellants.

*Evans & Flournoy, Charles A. Evans, Michael J. Bowers, Attorney General*, for appellee.