167 N.J. Super. 102 (1979)
400 A.2d 535
GROW FARMS CORPORATION, PLAINTIFF,
v.
THE NATIONAL STATE BANK, ELIZABETH, NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided February 5, 1979.
*105 Mr. Gerard C. Sims, Jr., for plaintiff (Messrs. Crummy, Del Deo, Dolan & Purcell, attorneys).
Mr. William S. Katchen for defendant (Messrs. Raven, Katchen & Greenberg, attorneys).
COLEMAN, J.S.C.
The motion filed in this case raises some novel questions: (1) can a national banking corporation[1] *106 be held liable for the tort of fraud and deceit; and (2) can a creditor proceed in a state court to avoid a preferential transfer by a debtor in violation of the Bankruptcy Act, 11 U.S.C.A. 701 et seq.?
Plaintiff Grow Farms Corporation (Grow Farms), a New York Corporation, filed a class action complaint against defendant The National State Bank (bank), alleging Uniform Commercial Code (U.C.C.) violations, preferential transfer of assets of a debtor, and fraud and deceit of vendor-creditors of Valley Fair Corporation (Valley Fair). Defendant seeks dismissal of the complaint for several reasons.
The second count of the complaint alleges that defendant conspired to defraud plaintiff's class of creditors by giving Valley Fair the appearance of solvency between November 18 and December 23, 1977, allowing it to benefit from Christmas sales of merchandise which plaintiff's class of creditors delivered to Valley Fair. This count alleges that the fraud and deceit commenced November 18, 1977 when defendant bank entered into a loan agreement with Valley Fair in order to change the bank's position from an unsecured creditor to that of a secured creditor. It is alleged that the purpose of this loan agreement was to enable Valley Fair to raise additional cash during the Christmas season by reselling the merchandise delivered by plaintiff's class of creditors and then depositing the sales proceeds in the bank.
On December 23, 1977 Valley Fair filed a petition under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. This petition was filed in the United States District Court, Southern District of New York. Plaintiff alleges that it has suffered a detriment by relying upon the appearance of solvency created by defendant. After the Chapter XI proceeding was filed, the bank, under a program of set-offs against the account of Valley Fair that had been enlarged by virtue of the Christmas sales, satisfied Valley Fair's entire indebtedness to it.
The bank seeks a dismissal of the second count of the complaint by contending that (1) plaintiff has failed to state *107 a cause of action for fraud and deceit; (2) plaintiff has failed to comply with the requirements of R. 4:5-8(a), and (3) only the debtor-in-possession can bring an action for fraudulent or preferential transfers.

I. Fraud and Deceit
Legal fraud or misrepresentation consists of a material representation of a presently existing or past fact made with knowledge of its falsity, with the intention that the other party rely thereon and with the result that the other person does so rely to his pecuniary detriment. Foont-Freedenfeld v. Electro-Protective, 126 N.J. Super. 254 (App. Div. 1973); Lopez v. Swyer, 115 N.J. Super. 237 (App. Div. 1971), aff'd 62 N.J. 267 (1973). Harper and James, in their treatise on the Law of Torts, vol. 1, § 7.1 state:
The modern law of misrepresentation evolved from the action on the case of deceit. Closely allied to the action for breach of warranty, it was not until 1789 that the action was available to one other than a party to a business transaction. But in Pasley v. Freedman, 3 Term Rep. 51 100 Eng. Rep. 450 (1789) it was held by a divided Court that one who fraudulently induced another to extend credit to a person known to be untrustworthy, could be held liable to the person thereby defrauded. After this case, deceit, as a distinct tort, was definitely disassociated from actions for breach of warranty and the basis for the legal duty was perceived to be independent of the contractual relationship between the parties. The source of the duty is the law and the basis is the relationship of the parties which usually, but not necessarily, involves a business transaction between them.
Since 1789, when Pasley was decided, it has been recognized that an action for fraud and deceit will lie against a defendant where it is shown that plaintiff was induced by defendant's misrepresentation to deal with a third party. This is true even though plaintiff had no dealings with defendant. See Prosser on Torts (4 ed. 1971), § 105 at 685. In the instant case it has been alleged by plaintiff that it is in the class of individuals defendant intended to influence *108 by its conduct. The liability of defendant would extend to all those who might reasonably be expected to assume that the representation was intended to reach them. Since that class can readily be identifiable through use of our liberal discovery procedures, defendant is not faced with liability to an indeterminate class for an indeterminate time or amount.
The second count of the complaint alleges intentional misrepresentations. New Jersey follows the doctrine established by the House of Lords in Derry v. Peek, 14 A.C. 337 (1889), which held that an action in deceit could not be maintained when nothing more than negligence is shown. Derry also held that in an action for deceit there must be proof that a false representation has been made knowingly or without belief in its truth, or in a reckless and careless manner, whether it be true or false. Prosser on Torts (4 ed. 1971), § 107 at 699. It is therefore apparent that deceit is an intentional tort which excludes traditional concepts of negligence or innocent misrepresentation. Plaintiff must show that defendant had a fraudulent or evil motive, a conscious wrongdoing, i.e., to mislead and to deceive plaintiff and to convey a false impression.
Since the second count of the complaint has alleged an intentional tort, this court does not interpret Pennsylvania National Turf Club v. Bank of West Jersey, 158 N.J. Super. 196 (App. Div. 1978), as holding that a banking institution is only accountable for violations of the Uniform Commercial Code. On the contrary, the court pointed out (at 203), "We recognize that although a bank has complied with the code provisions, such compliance does not necessarily immunize it from ordinary tort liability." The alleged fraud and deceit is not predicated upon a negligent breach of a duty to divulge the financial condition of one of the bank's depositors. Indeed, such a duty may not have existed. The gravamen of the fraud and deceit is based upon the duty which the law imposes upon every individual who chooses to speak not to intentionally speak falsely. A gratuitous *109 statement made by one who derives no benefit from giving the information may give rise to liability when it is intentionally false. The basis for liability is more persuasive where the maker derives an economic benefit and the statement is made in the course of its business relations.
Sound public policy is furthered by having persons who commit intentional wrongs respond in damages. It is hoped that the economic consequence of the intentional wrong will serve as a deterrence. The fact that the wrongdoer is a banking corporation makes no difference. Judson v. Peoples Bank & Trust Co., 25 N.J. 17, 29 (1957). Any corporate entity or individual is responsible for its torts unless otherwise exempt by law[2]. The court can find no exemption applicable to the instant case.
The allegations of fraud and deceit as an intentional tort bear no relationship to the petition under Chapter XI. Plaintiff's allegations are not against the debtor but against a creditor. This tort action does not deal with a transfer of the bankrupt's property but rather with the inducement by the bank to have plaintiff transfer its property to the debtor. Where the claim does not belong to the estate of the bankrupt, the trustee or debtor-in-possession may not pursue it. As was stated in Cissell v. American Home Assur. Co., 521 F.2d 790, 793 (6 Cir.1975), cert. den. 423 U.S. 1074, 96 S.Ct. 857, 47 L.Ed.2d 83 (1976):

In the final analysis, whether a right of action exists in the trustee depends on whether the action vests in the trustee as an assignee for the benefit of creditors or, on the other hand accrues to specific creditors. The latter is the case if the action is not in a fair sense an asset of the bankrupt which passes to the trustee. [Emphasis added]
Under the second count of the complaint plaintiff is asserting, on behalf of the vendors who extended credit to *110 Valley Fair in November and December of 1977, a class action  not against Valley Fair but against the bank. From the allegations in the case the court is satisfied that the claim alleged, which sounds in tort, accrues only to the specific class of creditors represented by plaintiff. Therefore, the court concludes that plaintiff has standing to bring the action for fraud and deceit.
Defendant seeks to dismiss the complaint, alleging that plaintiff has failed to spell out a cause of action as required by R. 4:5-8(a). The court's review of the pleadings leads to the inescapable conclusion that the complaint has set forth with sufficient particularity all of the wrongs alleged to have been committed by defendant, including all the dates and other specifics as practicable. Therefore, the complaint is in compliance with R. 4:5-7 and R. 4:5-8(a).

II. Preference
It is well established that deposits made in a bank by one who is insolvent, made not in the usual course of business and with the intent to effect a preference, are avoidable. Under these circumstances the bank's asserted right of set-off will not be honored. In re Henry C. Reusch & Co., Inc., 44 F. Supp. 677 (D.C.N.J. 1942); Continental & Comm. Trust & Savings Bk. v. Chicago Title & Trust Co., 229 U.S. 435, 33 S.Ct. 829, 57 L.Ed. 1268 (1913). Since the bank asserts that the deposits were made in the usual course of business without any intent to effect a preference, a factual dispute has been demonstrated. Thus, the court must determine the appropriate forum to decide the dispute.
Section 70(a) of the Bankruptcy Act, 11 U.S.C.A. § 110(a), vests in the trustee, or under § 342 in the debtor-in-possession, title to all the bankrupt's property, including property transferred by the debtor which may constitute a preference, as of the date the petition is filed. The petition was filed December 23, 1977. Section 60(b) of the Bankruptcy Act, 11 U.S.C.A. § 96, confers exclusive authority *111 upon the trustee to recover the property where there has been a preference. Section 60(b) further provides that "For the purpose of any recovery or avoidance under this section, where plenary proceedings are necessary, any State Court which have had jurisdiction if bankruptcy had not intervened and any Court of bankruptcy shall have concurrent jurisdiction." Since a plenary proceeding will be necessary to decide whether there was a preferential transfer, that proceeding may be conducted in the state or federal courts. Likewise, the New Jersey Superior Court would have had jurisdiction over a proceeding under N.J.S.A. 14A:14-10 or N.J.S.A. 2A:19-3, even if bankruptcy had not intervened. Kielb v. Johnson, 23 N.J. 60 (1956); Robinson v. Hallberg, 107 N.J. Super. 290 (Ch. Div. 1969), aff'd 110 N.J. Super. 364 (1970). It becomes apparent that the Superior Court has concurrent jurisdiction with the federal courts to decide cases alleging a preferential transfer. See also Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 74 (1978).
Having decided where the action to avoid preferential transfers may be instituted, the court must now decide who must bring the action. As previously mentioned, § 60(b) grants standing to the trustee to institute the action. Since this case has a debtor-in-possession rather than a trustee, § 342 of the Bankruptcy Act, 11 U.S.C.A. 742, confers the same rights upon the debtor-in-possession.
The New Jersey Insolvency and Reorganization Act, N.J.S.A. 14A:14-1 et seq., looks as well to the representative of the insolvent estate, the receiver, as the proper party to avoid preferences. N.J.S.A. 14A:14-14(4). Plaintiff, seeking to exercise the powers of a trustee or receiver to avoid a preference, has urged upon the court what it perceives as an exception to the general rule. Plaintiff cites Cissell v. American Home Assur. Co., supra, in favor of the proposition that the right to maintain this § 60 action belongs to plaintiff because only plaintiff and the proposed class of creditor-vendors were damaged by the alleged acts *112 of the bank. However, Cissell creates no such exception to the provisions of the Bankruptcy Act. There the trustee was seeking performance on a liability insurance policy issued to the bankrupt. The court held (at 792) that the trustee had no standing to bring the action, since an injured third party, not the trustee of the insured bankrupt, has the beneficial property rights under the policy "where the terms of the policy give the injured party a right of action against the insurer after obtaining a judgment against the insured." The court (at 793) distinguished that case from those "holding that a trustee in bankruptcy has standing to sue as a representative of creditors to avoid fraudulent transfers. [Citing Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 410 F.2d 135 (7 Cir.1969)]." Thus the Cissell court was delineating the statutory limits of the trustee's standing to sue as the representative of the bankrupt's creditors; it was not grafting an exception onto the Bankruptcy Act. Id. at 793.
Aside from the above-mentioned independent remedies of which plaintiff may avail itself, it is left with its rights as a creditor under Chapter XI of the Bankruptcy Act. The arrangement, including the debtor's continued possession of property and the trustee powers it may exercise under § 342, is conditioned in the first place upon acceptance by the creditors. Bankruptcy Act, § 361. The creditors represented by a creditor's committee under Bankruptcy Rule 11-29, may apply to the bankruptcy court for appointment of a receiver if the debtor is not fulfilling its duties. See Bankruptcy Act, §§ 332, 342. Or the creditors may petition for an order dismissing the proceedings. See Bankruptcy Act, § 328. There is no provision in the act allowing creditors to step into the shoes of the debtor-in-possession, nor has plaintiff provided any case law so modifying the act. Since plaintiff lacks standing to claim preferential transfers, that claim must be dismissed.

*113 III. Failure to Join an Indispensable Party
Defendant's motion to dismiss the complaint for failure to join an indispensable party, as required by R. 4:28, is found to be without substantial merit. Our Supreme Court, in Allen B. DuMont Labs, Inc. v. Marcalus Mfg. Co., 30 N.J. 290 (1959), defines an indispensable party in the following manner:
Whether a party is indispensable depends upon the circumstances of the particular case. As a general proposition it seems accurate to say that a party is not truly indispensable unless he has an interest inevitably involved in the subject matter before the court and a judgment cannot justly be made between the litigants without either adjudging or necessarily effecting the absentee's interest. [at 298]
The court has permitted plaintiff to pursue the claim of fraud and deceit and a violation of the Uniform Commercial Code. In light of these allegations, it is apparent that a proper judgment may be entered against the bank without having the debtor-in-possession named as an indispensable party. Even if Valley Fair were named as a party defendant in the case, § 314 of the Bankruptcy Act and Bankruptcy Rule 11-44 would operate as an automatic stay of any action against the debtor-in-possession. Thus, the court concludes that Valley Fair is not an indispensable party.

IV. Class Action
Counsel for defendant has urged that plaintiff be denied class action status as contemplated by R. 4:32-1. From a review of the complaint it is apparent that plaintiff has alleged the general prerequisites enumerated in R. 4:32-1(a), namely that (1) the class of vendor creditors is too numerous for joinder of all members since there are over 250 of them; (2) there are common questions of law and fact; (3) plaintiff's claims are typical of the class, and (4) plaintiff will fairly and adequately represent the class. Approval of such *114 an alleged class should not be withheld on the face of the complaint. See Riley v. New Rapids Carpet Center, 61 N.J. 218 (1972). Under R. 4:32-2 the court is to determine as soon as practicable whether the action may be maintained by the proposed class. Therefore, tentative approval of the class is hereby granted and discovery regarding the class is hereby ordered pending a preliminary hearing on the maintainability of the class action. See R. 4:32-2(b)(3). The hearing to determine whether to certify the class action will be conducted on or about May 18, 1979.

V. Miscellaneous
Defendant's motion to strike so much of the complaint as demands punitive damages is likewise denied. As previously stated, the allegation of fraud and deceit is an intentional tort, one which involves an allegation of malice. If plaintiff prevails, the claim for punitive damage may have merit. Stein v. Schmitz, 21 N.J. Misc. 218, 32 A.2d 844 (Sup. Ct. 1943); DiGiovanni v. Pessel, 55 N.J. 188, 190 (1970); Prosser on Torts (2 ed. 1955), § 2.
Defendant also seeks dismissal on the grounds that plaintiff is a foreign corporation and is not authorized to transact business in New Jersey, and therefore is prohibited from maintaining this action as contemplated by N.J.S.A. 14A:13-11(1). From the pleadings on file it appears that plaintiff's only contact with New Jersey is through interstate shipments of poultry from New York to New Jersey. Even if plaintiff is later found to have sufficient contacts to require authorization under N.J.S.A. 14A:13-11(1), it would still be permitted to comply with those statutory provisions during the trial of the matter to avoid a dismissal. Materials Research Corp. v. Metron, 64 N.J. 74 (1973). This claim for dismissal is likewise without merit.
NOTES
[1] Established pursuant to 12 U.S.C.A. § 21.
[2] For a discussion of a master's responsibility for intentional torts of its servants, see Gindin v. Baron, 11 N.J. Super. 215, 220 (App. Div. 1951).