DANKA FUNDING, L.L.C., Plaintiff,

v.

PAGE, SCRANTOM, SPROUSE, TUCKER & FORD, P.C., a Georgia corporation, Defendant.

Civil Action No. 98–1288.

United States District Court,
D. New Jersey.

Sept. 28, 1998.

William Uscher, Uscher, Quiat, Uscher & Russo, Hackensack, NJ, for Plaintiff.

Morrill J. Cole, David M. Kohane, Cole, Schotz, Meisel, Forman & Leonard, Hackensack, NJ, for Defendant.

## *OPINION*

WOLIN, District Judge.

This case is here on the motion of defendant, Page, Scrantom, Sprouse, Tucker & Ford, P.C. ("Page, Scrantom"), for the following relief: (1) dismissal of the claims of plaintiff, Danka Funding Company, L.L.C. ("DFC"), for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2); (2) dismissal of plaintiff's claims for failure to comply with N.J.S.A. 42:2B–57.a, requiring registration in New Jersey of foreign limited liability companies doing business in this state desiring to bring suit in New Jersey; or, in the alternative, (3) transfer of venue, under 28 U.S.C. § 1404, to the United States District Court for the Middle District of Georgia. The Court has considered these matters under Federal Rule of Civil Procedure 78. For the reasons stated herein, defendant's motion will be denied.

## BACKGROUND

### The Parties

Page, Scrantom is a law firm with its sole office in Columbus, Georgia. (George Scrantom Cert. ¶ 1). It does no business in New Jersey and has no ties to New Jersey other than this lawsuit. (*Id.* ¶ 2).

DFC is a New York limited liability company engaged in the business of acquiring, pledging, holding, and disposing of certain

leases and equipment or interests, issuing non-recourse obligations, and related acts. (Michael Quiat Aff., Ex. D). It claims its principle place of business in New Jersey. (Nancy Bosch Aff. ¶ 1; Michael Quiat Aff., Ex. B). DFC was registered in New Jersey from December 21, 1995, until May 15, 1997, at which point the registration lapsed or was withdrawn. (Bosch Aff. ¶ 12; *See* David Kohane Cert., Ex. A). Due to the lapse, it appears that DFC was unregistered at the time it filed its complaint in New Jersey; it has since re-registered on May 7, 1998. (Bosch Aff. ¶ 12; Quiat Aff., Ex. D).

**The Lease**

On January 29, 1997, Page, Scrantom entered into a lease to rent two *Konica* copiers and related equipment ("the Lease"). (Scrantom Cert., Ex. A.) The Lease was signed in Georgia, and its terms required Page, Scrantom to keep and use the equipment only at the firm's Columbus, Georgia address. (*Id.*).

The supplier on the Lease is listed as "DANKA", with an address in Columbus, Georgia. This Court understands that "DANKA" stands for Danka Industries and/or DANKA OFFICE IMAGING COMPANY (hereinafter "Danka"), a Delaware corporation. (*See* Davis Laney Aff., Ex. A; Defendant's Reply Brief, p. 1). The Lessor is listed as "American Business Credit Corporation" ("ABCC"), with an address in St. Petersburg, Florida. (Laney Aff., Ex. A). ABCC is identified on the Lease's letterhead as "A Danka Company", and the copyright of the Lease identifies the lease-form as created and used by ABCC. (*See Id.*). Both ABCC and Danka are alleged to have their principle places of business in Florida; Page, Scrantom, however, did business with those companies through a Columbus, Georgia office. (Defendant's Reply Brief, p. 1).

The Lease contains a choice of law/forum-selection clause on its back, where the following language is printed in bold:

CHOICE OF LAW: THIS RENTAL AND EACH SCHEDULE SHALL BE GOVERNED BY THE INTERNAL LAWS FOR THE STATE IN WHICH OUR OR OUR ASSIGNEE'S PRINCIPAL CORPORATE OFFICES ARE LO-CATED. YOU CONSENT TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN OUR OR OUR ASSIGNEE'S STATE, AND WAIVE ANY OBJECTION RELATING TO IMPROPER VENUE. (Scrantom Cert., Ex. A).

Subsequent to the execution of the Lease, it was assigned to DFC. (Quiat Aff., Ex. B).

**New Jersey Lawsuit**

On January 14, 1998, DFC filed a complaint in the Superior Court of New Jersey, Bergen County, alleging that the assignor of the Lease had delivered to Page, Scrantom certain office equipment. (*Id.*). Page, Scrantom filed a removal to this Court based on diversity of citizenship.

DFC alleges that defendant has defaulted on its obligations by failing to make regular monthly payments due on the Lease. (*Id.*). Under the terms of the Lease, DFC argues that all obligations of the defendant are now accelerated and currently due, plus an additional one and one-third percent per month additional interest on all monies due. (*Id.*). DFC calculates the total amount owed to it as $112,452.71, in addition to other costs relating to this litigation. (*Id.*).

It is undisputed that all of the witnesses Page, Scrantom will likely call to testify are from Georgia. Nancy Bosch, Vice President of a company that acts as servicing manager for DFC, states in her affidavit that DFC will require "at least one, and perhaps as many as three witnesses from its home office in New Jersey" to testify in this case. (Bosch Aff. ¶ 10).

**Georgia Lawsuit**

On February 12, 1998, Page, Scrantom filed suit against Danka and ABCC in the United States District Court for the Middle District of Georgia, Columbus Division, Case No. 9:98–CV–32 (JRE). Page, Scrantom had learned of the New Jersey filing, but had not been served. Service of process in the Georgia lawsuit was performed on February 13, 1998, before service of this lawsuit on February 19, 1998. (Defendant's Brief, p. 5). In the Georgia lawsuit, Page, Scrantom seeks rescission of the Lease and refund of Lease

payments it made for the equipment. (Scrantom Cert., Ex. B). It bases its claims for rescission in the Georgia lawsuit on its allegations that the copiers leased to it were defective upon delivery, that the defects were beyond cure, and that Page, Scrantom had justifiably rejected tender of the machines and communicated this rejection immediately. (*Id.*). Page, Scrantom avers through the certification of its President, W.G. Scrantom, Jr., that it filed the Georgia lawsuit "in order to protect itself from the consequences of the defective merchandise leased to it and from efforts to drag Page Scrantom into the courts of New Jersey over a transaction relating only to Georgia." (Scrantom Cert. ¶ 6).

For purposes of the Georgia lawsuit, Page, Scrantom has identified eight witnesses of its firm with particular knowledge of the facts; all are from Georgia. (Laney Aff. ¶ 7). Danka and ABCC have identified seven individuals, six identified as Georgia residents, and a seventh who's address is listed as "unknown." (Laney Aff., Ex. A).

## DISCUSSION

### A. Motion to Dismiss for Lack of Personal Jurisdiction

■ Defendant first moves to dismiss plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. Parties to a contract are free to consent in advance to personal jurisdiction in a foreign court through the use of consent-to-jurisdiction clauses, also known as forum-selection clauses.[1] *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10–11, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (citing *National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315–16, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964)). Because there is no question that defendant lacks the minimum contacts necessary to confer personal jurisdiction on this Court as contemplated by *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny, the issue of whether personal jurisdiction exists rests solely on the enforceability of the forum-selection clause in question.

The Third Circuit has noted that the construction of a contract is usually a matter of state, not federal, common law. *General Engineering Corp. v. Martin Marietta*, 783 F.2d 352, 356 (3d Cir.1986); *see also In Re Diaz Contracting, Inc.*, 817 F.2d 1047, 1050–52 (3d Cir.1987) (noting that "the law of the state or other jurisdictions whose law governs the construction of the contract generally applies to the enforceability determination unless 'a significant conflict between some federal policy or interest and the use of state law [exists].' ").

■ Accordingly, the initial step this Court must undertake is to determine what state law to apply when considering whether the forum-selection clause is an enforceable part of the contract agreed to by the parties. For this preliminary inquiry, the language of the clause itself is not authority for what law to apply. Rather, a federal court sitting in diversity must utilize the choice of law rules of the state in which it sits. *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

■ New Jersey courts have implemented the governmental-interest approach to choice-of-law questions, which requires application of the law of the state with the greatest interest in resolving the particular issue raised by the underlying litigation. *E.g. Gantes v. Kason Corp.*, 145 N.J. 478, 484–493, 679 A.2d 106 (1996). "The initial prong of the governmental-interest analysis entails an inquiry into whether there is an actual conflict between the laws of the respective states, a determination that is made on an issue-by-issue basis." *Id.* at 484, 679 A.2d 106 (citing *Veazey v. Doremus*, 103 N.J. 244, 248, 510 A.2d 1187 (1986)). In the absence of an actual conflict, the law of the forum state—in this case, New Jersey—is applied. *See Schreiber v. Camm*, 848 F.Supp. 1170, 1174 (D.N.J.1994) (citing, in part, *Schum v. Bailey*, 578 F.2d 493, 497 (3d Cir.1978)).

Here, no actual conflict exists. Regarding the standard for consent to forum-selection

---

1. The clause in question concerns both choice-of-law and forum-selection language. On this motion, however, the defendant has challenged the forum-selection language and not that relating to choice-of-law.

clauses in contracts, both New Jersey and Georgia have adopted the law as laid out by the United States Supreme Court in *M/S Bremen, supra,* 407 U.S. at 10, 12, 15–16, 92 S.Ct. 1907, wherein the Court found that freely negotiated forum-selection clauses are prima facie valid and should be enforced absent compelling reasons making enforcement unreasonable; compelling reasons include circumstances where such clauses were procured by fraud, undue influence, or unequal bargaining power, or where the chosen forum is seriously inconvenient for trial, or where enforcement would contravene a strong public policy of the forum in which the suit is brought.[2] *See Kubis & Perszyk Assoc. Inc. v. Sun Microsystems, Inc.,* 146 N.J. 176, 186–93, 680 A.2d 618 (1996) (stating that *M/S Bremen* represents the modern approach to the enforceability of forum-selection clauses, but finding that enforcement of forum-selection clauses in contracts subject to the New Jersey Franchise Act would fundamentally conflict with basic legislative policy); *Antec Corp. v. Popcorn Channel, L.P.,* 225 Ga.App. 1, 2, 482 S.E.2d 509 (1997) and *Harry S. Peterson Co. v. Nat. Union Fire Ins. Co.,* 209 Ga.App. 585, 589–91, 434 S.E.2d 778 (1993) (both adopting *M/S Bremen* analysis). This Court will therefore apply *M/S Bremen* standard as it has been applied in New Jersey and this Circuit, occasionally looking to the United States Supreme Court for guidance.

### 1. Fraud, Undue Influence, and Unequal Bargaining Power

■ A forum-selection clause will be set aside if it is the product of fraud or over-reaching. *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190, 202 (3d Cir.1983). This is so, however, only where "the *inclusion of that clause in the contract* was the product of fraud or coercion." *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); *see also National Micrographics Sys. v. Canon U.S.A.,* 825 F.Supp. 671, 675 (D.N.J.1993) ("It is insufficient to allege that one was induced generally to enter into the contract itself as a result of fraud.").

■ It is well established that silence may be fraudulent and that fraud may be found where one party suppresses facts that, under the circumstances, it has a duty to disclose. *Strawn v. Canuso,* 140 N.J. 43, 56, 657 A.2d 420 (1995) (citations omitted).[3] The defendant is wrong to suppose that these tenets of law support a finding of fraud in this case. Page, Scrantom's argument may be summarized as follows: because Danka and ABCC knew, at the time they signed the Lease, that they were going to assign the Lease thereafter to DFC, Danka and ABCC committed fraud by not informing defendant of such intent. Defendant's argument fails because there is no reason to suppose that a legal obligation existed requiring the lessor to inform defendant of the lessor's plan to assign the Lease where the language of the contract itself put defendant on notice that an assignment might occur and was contemplated. In such an instance, it should be acknowledged that the lessor had fulfilled any duty it owed under the circumstances and that defendant had the right to inquire

2. The defendant concedes that Georgia follows the approach to forum-selection clauses outlined in *M/S Bremen*, but maintains that the result of *Central Ohio Graphics, Inc. v. Alco Capital Resource, Inc.,* 221 Ga.App. 434, 472 S.E.2d 2 (1996), directs this Court to find the clause in the instant case unenforceable. The defendant's argument is unpersuasive as the clause considered in *Central* is factually distinguishable from the one before this Court.

In *Central*, Alco Capital Resource Incorporated (Alco), entered into an agreement with Central Ohio Graphics Incorporated (Central) to lease two copier machines. The agreement contained an entirely open-ended forum selection clause that read " 'Alco Capital has the option of pursu-ing any action under this agreement in any court of competent jurisdiction and the customer [Central] consents to jurisdiction in the state of our choice.' " *Id.* at 434, 472 S.E.2d 2. Thus, the forum-selection clause in *Central* was much broader than that agreed to in this case. Furthermore, Graphics was not a law firm and did not enter the agreement via a twenty-three year member and representative of the firm, as is the case here. These distinguishing facts are sufficient to conclude that *Central* is not controlling, and this Court will engage in its own application of *M/S Bremen* analysis to conclude whether or not the forum-selection clause is enforceable.

3. *Accord Clay v. Dep't. of Transp.,* 198 Ga.App. 155, 157, 400 S.E.2d 684 (Ga.Ct.App.1990).

as to the who, what, and where of the assignee. The defendant's failure to inquire must be regarded as primarily the cause of its own complaint.

■ The Court is also unmoved by defendant's averments that it signed the agreement on a take-it-or-leave-it basis, implying an unequal bargaining position. (Laney Aff. pg. 2). Defendant is a law firm. The signatory to the Lease on behalf of the defendant was a vice-president and partner of the firm who had been employed by defendant for over twenty-three years. As such, the defendant must be considered to have entered into exactly the type of arm's-length negotiation by experienced and sophisticated businessman that favors upholding such clauses. *See M/S Bremen, supra,* 407 U.S. at 12, 92 S.Ct. 1907. Defendant's claim that it thought the lease-form was non-negotiable, while admitting that it had failed to *attempt* to negotiate any portion of the printed terms and had signed it in order to receive the copiers as soon as possible, is simply inadequate. *See Moscowitz v. Middlesex Borough Bldg. & Loan Ass'n,* 14 N.J.Super. 515, 521, 82 A.2d 228 (Law Div.1951) (courts not free to make better contract than one entered into by parties), *aff'd,* 18 N.J.Super. 182, 186, 87 A.2d 33 (App.Div.1952); *see also Moreira Const. Co. Inc. v. Moretrench Corp.,* 97 N.J.Super. 391, 394, 235 A.2d 211 (App.Div.1967), *aff'd o.b.* 51 N.J. 405, 241 A.2d 236 (1968) (in the absence of fraud, even where one fails to read written contract before signing it, its provisions are nevertheless binding), *aff'd* 51 N.J. 405, 241 A.2d 236 (1968). Despite defendant's arguments to the contrary,[4] defendant can be "presumed to have received appropriate consideration[ ] in the form of a lower price." *See Hodes v. S.N.C. Achille Lauro ed,* 858 F.2d 905, 913 (3d Cir.1988), *cert. dismissed,* 490 U.S. 1001, 109 S.Ct. 1633, 104 L.Ed.2d 149 (1989), *overruled on other grounds,* 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989).

## 2. Forum Results in Serious (Unreasonable) Inconvenience

The Third Circuit has made clear that "a party objecting to the enforcement of a forum selection clause as 'unreasonable' must meet a strict standard of proof." *In Re Diaz Contracting, Inc.,* 817 F.2d 1047, 1051 (3d Cir.1987) (citation omitted). "That the [United States Supreme] Court intended this to be a strict standard in favor of enforcement is shown by the Court's admonition that enforcement may be denied only where it would be 'seriously inconvenient,' such that the resisting party 'would be effectively deprived of its day in court.'" *General Eng'g Corp. v. Martin Marietta Alumina,* 783 F.2d 352, 356 (3d Cir.1986) (citing *M/S Bremen, supra,* 407 U.S. at 16, 92 S.Ct. 1907).

■ Here, defendant argues that all of the witnesses it will call live in Columbus, Georgia. Defendant further points out that Danka and ABCC have also identified six out of seven witnesses from Georgia in the Georgia lawsuit. Defendant's sole place of business is in Georgia, and all of its employees reside therein.

■ This Court understands that defendant will incur more costs as a result of defending suit in New Jersey, but defendant has not submitted any evidence that it will be effectively deprived of its day in court if jurisdiction is maintained. Defendant has

---

4. Defendant contends that it did not receive consideration for the inclusion of the clause because plaintiff had already pre-approved defendant as a potential assignee before the Lease was actually signed. This argument fails because any specific negotiations would have presumably affected the price of the Lease and the terms of its assignment, notwithstanding the quoted price based on the standard pre-approved assignee and lease-form. *See Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 594, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) ("it stands to reason that passengers who purchase tickets containing a forum clause like that at issue in this case benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued"). In short, there is no reason to suppose defendant was unable to do away with the forum-selection clause if it was willing to pay a higher rate. The fact that a standard rate existed before such negotiation does not indicate a lack of consideration. The plaintiff's affidavit asserting that the forum-selection clause was freely negotiable, had been negotiated in other business transactions, and served to enhance the competitiveness of DFC by lowering risk of suit in distant forums and allowing DFC to offer less expensive leases thus comports with law and common sense.

not submitted any evidence that its witnesses will be unable to travel to testify. The copiers have been returned to the original lessors, and it cannot be said that their physical presence would be required at trial in any event. Furthermore, the plaintiff has at least alleged that it will need to call its own witnesses from New Jersey. "Mere inconvenience or additional expense is not the test of unreasonableness, since it may be assumed that the plaintiff received under the contract consideration for these things." *Central Contracting Co. v. Maryland Casualty Co.,* 367 F.2d 341, 344 (3d Cir.1966).

### 3. Public Policy

 Defendant briefly argues that enforcement of the forum-selection clause in this case would violate New Jersey's policy in favor of deciding all related controversies in a single lawsuit. *See Joel v. Morrocco,* 147 N.J. 546, 688 A.2d 1036 (1997); *Olds v. Donnelly,* 150 N.J. 424, 696 A.2d 633 (1997); *Cogdell v. Hospital Ctr.,* 116 N.J. 7, 560 A.2d 1169 (1989). The defendant's reference to New Jersey's "entire controversy doctrine" is misplaced. It is defendant who, upon learning of the action brought against it by plaintiff in New Jersey, chose to file a separate action in Georgia instead of attempting to join the parties in this case. Having sought to frustrate the goals of the entire controversy doctrine, defendant may not now incant the policy of the rule as a shield to prevent enforcement of the forum-selection clause. Moreover, a strong presumption exists in favor of maintaining jurisdiction where the plaintiff is a resident choosing its home forum, *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 256 n. 24, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), as well as in favor of enforcement of forum-selection clauses as representative of a party's freedom to contract. *M/S Bremen, supra,* 407 U.S. at 11–12, 92 S.Ct. 1907.

### 4. Miscellaneous

Defendant also raises another argument that does not neatly fit into any of the preceding categories. Basically, defendant contends that the terms of the forum-selection clause are not enforceable as no specific jurisdiction is cited in the language of the contract.

In *Shelter Sys. v. Lanni Builders,* 263 N.J.Super. 373, 375, 622 A.2d 1345 (App.Div. 1993), the New Jersey Appellate Division was confronted with the question of whether to enforce a forum-selection clause in a contract that read as follows:

> Any actions, claims or suits (whether in law or equity) arising out of or relating to this Contract, or the alleged breach thereof, shall be brought only in courts located in the State where Seller's principal place of business is located.

The defendants in *Shelter* likewise argued that they did not know, upon signing the agreement, the location of the plaintiff's principal place of business. The court ruled: "It is tempting to rule that it does not matter if they did not know; having agreed to a forum in which to litigate disputes, they should have inquired where it was." *Id.* The court did not need to go so far, however, as it concluded that defendants were in possession of facts capable of alerting them that New Jersey was involved. Specifically, the plaintiff's letterhead showed five addresses, one of which identified the New Jersey location. *Id.*

 Under the facts of the instant case, this Court is willing to hold what the Appellate Division contemplated, but did not need to hold in *Shelter.* Accordingly, where a forum-selection clause professing consent to jurisdiction in the state where a party's or its assignee's principal place of business lies is part of an agreement in a sophisticated business transaction, and one party to the agreement is a law firm, the forum-selection clause is valid absent fraud, serious inconvenience, or a violation of public policy, notwithstanding that the law firm was unaware of the assignee's principal place of business at the time of signing the agreement. The law firm, because it professes to be bound by such an agreement, must make any inquiries it feels necessary to ascertain the identity of the assignee before it enters into the agreement. Failure to so inquire will result in the Court's conclusion that the law firm has consented to jurisdiction wherever the party's or its assignee's principal place of business lies.

As defendant has failed to offer compelling reasons for not enforcing the forum-selection clause in question, this Court finds the clause to be valid and assumes personal jurisdiction over defendant in this case.

## B. Motion to Dismiss for Plaintiff's Failure to be Registered in New Jersey at Time of Filing

 The New Jersey Limited Liability Company Act, N.J.S.A. 42:2b–1 *et seq.*, contains a qualifying statute that reads as follows:

> a. A foreign limited liability company doing business in this State may not maintain any action, suit or proceeding in this State until it has registered in this State, and has paid to this State all fees and penalties for the years or parts thereof, during which it did business in this State without having registered. N.J.S.A. 42:2B–57a.

DFC was registered to transact business in New Jersey from December 21, 1995, until May 15, 1997, at which point the registration either lapsed or was withdrawn. DFC filed suit in the Superior Court of New Jersey, Law Division, Bergen County, on January 14, 1998. DFC became aware of the lapse through plaintiff's pleadings and has since re-registered on May 7, 1998. Based on the language of the qualifying statute, defendant posits that plaintiff had no standing to file suit and, therefore, plaintiff's claim should be dismissed.

Although defendant's conclusion is reasonable from a casual reading of the statute, it is not the law in New Jersey. Time and time again, New Jersey courts have reiterated their understanding that a company's failure to register before filing does not require dismissal so long as the company corrects the deficiency and files during the proceedings. *See Materials Research Corp. v. Metron,* 64 N.J. 74, 77 n. 1, 312 A.2d 147 (1973) ("[c]ompliance with a qualification requirement during the course of trial has been held sufficient for a plaintiff unqualified at the action's inception to avoid being precluded from maintaining suit"); *Grow Farms Corp. v. National State Bank,* 167 N.J.Super. 102, 114, 400 A.2d 535 (Law Div.1979) ("[e]ven if plaintiff is later found to … require authori-

zation …, it would still be permitted to comply with those statutory provisions during the trial of the matter to avoid a dismissal"); *Menley & James Labs., Ltd. v. Vornado, Inc.,* 90 N.J.Super. 404, 414, 217 A.2d 889 (Ch.Div.1966) (stating that, although plaintiff had not obtained a certificate of authority at the time suit was brought, subsequent authorization removed the statutory impediment); *Peter Doelger Brewing Corp. v. Spindel,* 14 N.J.Misc. 523, 524, 186 A. 429 (1936) (even though party not qualified at filing, once qualified would not be dismissed); *cf. Davis & Dorand, Inc. v. Patient Care Medical Services Inc.,* 208 N.J.Super. 450, 454, 459–60, 506 A.2d 70 (Law Div.1985) (dismissing foreign corporation's complaint where court had afforded foreign corporation opportunity to comply with all filing requirements prior to hearing motion on dismissal, but corporation had failed to obtain certificate of authority). These cases appear equally applicable to the limited liability company statute.

 Defendant reasons that the cases cited could not be meant to apply in its own circumstances, where defendant had filed in another jurisdiction after plaintiff filed suit in New Jersey, but before plaintiff re-registered. Defendant argues that, because of these facts, defendant should be considered to have filed first for purposes of applying the first-filed rule. The first-filed rule is inapplicable, however, as the filed actions in New Jersey and Georgia involve different parties and different issues. *See Equal Employment Opportunity Comm'n v. University of Pennsylvania,* 850 F.2d 969, 971–72 (3d Cir.1988). Although the cases could possibly be consolidated, the suits are not duplicative.

Furthermore, there is no reason to suppose that the rather straight-forward interpretation given by New Jersey courts to qualification statutes should be muddled by holding registration not to relate back to the original filing for purposes of the first-filed rule. No suggestion exists in any of the qualification cases that failure to register at commencement of suit affects other possibly related timeliness issues, such as the first-filed rule. In fact, the specific language of the statute only forbids "maintain[ing]" an action, not the commencement of one. *See*

*Commercial Credit Corp. v. Boyko,* 103 N.J.L. 620, 624–25, 137 A. 534 (1927) (noting that a majority of states interpreting statutes of like import have held that the word "maintain" does not inhibit the institution of the action, but refers to a situation where, after the action is brought, the foreign company may qualify itself to maintain the action by complying with the requirements of the statute). Accordingly, defendant's motion to dismiss for plaintiff's failure to be registered at the time of initiating suit will be denied.

### C. Motion to Transfer Venue under 28 U.S.C. § 1404(a)

Page, Scrantom seeks, in the alternative, a transfer of venue from this Court to the United States District Court for the Middle District of Georgia pursuant to 28 U.S.C. § 1404(a), which provides:

> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The Supreme Court has held that federal common law rules govern the enforceability of a forum selection clause in federal court, where jurisdiction is based on diversity and a party moves to transfer the action under § 1404(a). *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 27–33, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). When implicated by a transfer request, § 1404(a) reflects a significant federal interest which overrides state law concerns. *Id.* at 27–32, 108 S.Ct. 2239.

The decision whether to transfer an action rests in the sound discretion of the trial court "appraising the practical inconvenience posed to the litigants and to the court should a particular action be litigated in one forum or another." *Lony v. E.I. DuPont de Nemours & Co.,* 886 F.2d 628, 632 (3d Cir. 1989); *Plum Tree, Inc. v. Stockment,* 488 F.2d 754, 756 (3d Cir.1973). The " 'Plaintiff's choice of venue should not be lightly disturbed.' " *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995) (citation omitted). Where there is a valid forum selection clause, the party seeking to avoid enforcement bears the burden of demonstrating why they should not be bound by their contractu-

ally chosen forum. *Id.* at 880 (citing *M/S Bremen, supra,* 407 U.S. at 12–13, 92 S.Ct. 1907). When raising convenience as a bar to enforcement, this Court considers it especially difficult to avoid enforcement where the clause itself includes language that the contracting party waives any objection to improper venue, as is the case here. Nonetheless, the clause itself is only one factor to be considered, albeit a considerable one, and not dispositive. *Id.* at 880. This Court must apply the appropriate balancing test to determine whether transfer is appropriate.

In *Jumara,* the Third Circuit enumerated various private and public interests protected by § 1404(a). Private interests include: (1) "plaintiff's forum preference as manifested in the original choice," (2) "the defendant's preference," (3) "whether the claim arose elsewhere," (4) "the convenience of the parties as indicated by their relative physical and financial condition," (5) "the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora," and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* at 879 (citations omitted).

Public interests include: (1) "the enforceability of the judgment," (2) "practical considerations that could make the trial easy, expeditious, or inexpensive," (3) the relative administrative difficulty in the two fora resulting from court congestion, (4) "the local interest in deciding local controversies at home," (5) "the public policies of the fora," and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879–80 (citations omitted).

Although it is clear that defendant's forum preference is Georgia, plaintiff's preference for New Jersey deserves deference. "[C]ourts of this circuit have noted 'unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum prevails.' " *Telebrands Direct Response Corp. v. Ovation Communications, Inc.,* 802 F.Supp. 1169, 1175 (D.N.J. 1992) (citing *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970)); *see also American*

*Telephone & Telegraph Co. v. MCI Communications Corp.,* 736 F.Supp. 1294, 1306 (D.N.J.1990) (stating that plaintiff's choice of forum is of "paramount concern"). In situations where a plaintiff has chosen its home forum, the plaintiff's choice of forum is "entitled to greater deference." *Piper Aircraft v. Reyno,* 454 U.S. 235, 256, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). The plaintiff's choice, however, is entitled to less deference where the operative facts of a lawsuit occurred outside the forum selected by plaintiff. *American Telephone & Telegraph Co. v. MCI Communications Corp., supra,* 736 F.Supp. at 1306.

In this case, it is clear that the negotiation and signing of the Lease occurred in Georgia. DFC's choice of forum is therefore accorded less deference. However, because DFC's principal place of business is in New Jersey, and because this Court has found a valid forum-selection clause to be in effect consenting to venue in New Jersey and professing to waive any object on to improper venue, DFC's choice of its home forum is still entitled to greater deference than Page, Scrantom's choice.

Defendant's other arguments are equally unavailing. Although the facts giving rise to defendant's claims in its Georgia lawsuit arose in Georgia, here the Lease has been assigned to a New Jersey company. DFC has a considerable interest in protecting its rights under the Lease. Such rights stem from the contract itself. This Court sees no difficulty in determining the rights of DFC under the assignment in this forum.

In addition, defendant has presented no evidence that Page, Scrantom will be unable to physically or financially defend suit in this forum. No evidence has been offered that any witnesses will be unavailable for trial in New Jersey. A similar showing is lacking concerning any required books and records.

A consideration of the public interests counsels no different conclusion. Any judgment awarded by this Court at trial, if any, would be easily domesticated in Georgia. Circumstances do not make it impractical to try this matter here, and there is no reason to transfer due to court congestion; this Court is confident that it is capable of providing an efficient, final, and correct resolution to this matter. New Jersey has a considerable interest in providing protection of its laws to foreign companies making their homes in this state, and no public policy of New Jersey mandates transfer. Finally, the choice of law provision in the contract indicates that New Jersey law is suitable, and this Court will have no difficulty applying the same.

## CONCLUSION

Accordingly, this Court will deny defendant's motion to dismiss, or, in the alternative, to transfer. The valid forum-selection clause contained in the Lease provides this Court with personal jurisdiction. Plaintiff has re-registered and, thus, the statutory impediment barring suit is removed. Finally, the Court is convinced that defendant, a law firm, seeks to accomplish through transfer what defendant failed to through contract. Because the plaintiff was entitled to choose its home forum and because the validity of the forum-selection clause deserves considerable weight—which weight is not counterbalanced by the other factors—this Court declines to grant defendant relief. Trial of this matter will be scheduled for October 13, 1998 at 9:30 a.m.

An appropriate Order is attached.

## *ORDER*

In accordance with the Court's Memorandum Opinion filed herewith,

It is on this 28th day of September, 1998

ORDERED that defendant's motions to dismiss, or, in the alternative, to transfer are denied; and it is further

ORDERED that the trial of this matter will commence on October 13, 1998 at 9:30 a.m.